MISSOURI, K. & T. RY. CO. OF TEXAS v. NORRIS et al. (No. 7444.)*

(Court of Civil Appeals of Texas. Dallas. Jan. 29, 1916. Rehearing Denied Feb. 26, 1916.)

1. CARRIERS ⬉318(4)—CARRIAGE OF PASSENGERS—PROXIMATE CAUSE OF DEATH—SUFFICIENCY OF EVIDENCE.

In a suit for a death against a railroad, evidence held sufficient to authorize finding that the negligence of the road's servants in making a flying switch with the car on which decedent rode, and the injuries received by him as a result thereof directly and proximately contributed to produce his death.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1307, 1308; Dec. Dig. ⬉318(4).]

2. DEATH ⬉17—PROXIMATE CAUSE.

Where the injuries sustained by a shipper of household goods and live stock while riding therewith in a box car as a result of the road's negligence in making a flying switch were the efficient cause of his death, together with injuries subsequently received by him from a fall off his wagon, even though such fall was not caused by sickness resulting from his previous injury, the damages caused by each accident not being separable, the road was liable for the death, since if an accident occurs from two causes, both together the efficient cause, all persons whose negligent acts contributed to the accident are liable for the injury.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 19, 21; Dec. Dig. ⬉17.]

3. DEATH ⬉103(2) — PROXIMATE CAUSE — QUESTION FOR JURY.

In a suit against a railroad for a death, where the jury could have found that the negligence of the road's servants in making a flying switch was the sole cause of the death, that it proximately contributed to cause the death, or

that the injuries received by decedent from the flying switch and the injuries subsequently sustained by him in a fall from his wagon together were the efficient cause of the death, the court properly refused a peremptory instruction for the road, since the question of proximate cause is ordinarily for the jury, and only where the facts are undisputed and the inferences to be drawn from them perfectly plain is it the court's duty to determine the question of negligence as a matter of law, a question ordinarily for the jury.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 141; Dec. Dig. ☜103(2).]

4. APPEAL AND ERROR ☜934(2)—FAILURE TO SUBMIT ISSUE—EFFECT—STATUTE.
By direct provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, where the case is submitted on special issues, an issue not submitted and not requested by a party must be deemed to have been found so as to support the judgment, if there was evidence to sustain such a finding.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☜934(2).]

5. APPEAL AND ERROR ☜1062(5)—HARMLESS ERROR—SUBMISSION OF ISSUES.
In a suit against a railroad for a death, error in submitting the issue whether the injuries received by decedent when riding in the road's box car contributed to cause his death after he fell from a wagon, the answer to which could fix no liability on defendant, furnished no ground for reversal of judgment for plaintiffs.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4218; Dec. Dig. ☜1062(5).]

6. TRIAL ☜213—REFUSAL OF CHARGE.
In a suit against a railroad for a death, where the case was submitted on special issues, the refusal of a charge, embodying a declaration of law which could only be applied by the court to the facts found, and could have been of no material aid to the jury in determining the questions of fact submitted to them, was proper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 480; Dec. Dig. ☜213.]

7. TRIAL ☜260(1)—INSTRUCTIONS.
Charges need not be repeated.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. ☜260(1).]

8. APPEAL AND ERROR ☜1062(1)—HARMLESS ERROR—REFUSAL OF SPECIAL ISSUE.
In a suit against a railroad for a death, the refusal of the issue, "Did the injuries received by deceased * * * as a result of a collision with a box car, directly or proximately in a natural and continuous sequence, and unbroken by a new cause, produce his death?" was harmless to the road, where, had it been submitted and answered in the negative, the judgment against the road would have been authorized and supported by the evidence and other findings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4212; Dec. Dig. ☜1062(1).]

9. TRIAL ☜350(1)—SUBMISSION OF USELESS ISSUE.
In a suit against a railroad for a death, the refusal of an issue as to which neither an affirmative nor a negative answer would have relieved the road from liability was proper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 828; Dec. Dig. ☜350(1).]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by J. A. Norris and others against the Missouri, Kansas & Texas Railway Company

of Texas. From the judgment defendant appeals. Affirmed.

Lawther, Pope & Mays, of Dallas, for appellant. Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellees.

TALBOT, J. This suit was instituted by the surviving widow and children of J. S. Norris, deceased, to recover damages alleged to have been sustained by them on account of the death of the said Norris, which they claim was caused by the negligence of appellant. The deceased, J. S. Norris, had purchased a farm near Pottsboro, Grayson county, Tex., and in January, 1914, was moving to his new home. From Greenville, Tex., to Pottsboro, Tex., he, together with his household goods, some live stock, farm implements, and produce, was transported by the appellant railway company in a box car. This car arrived at Pottsboro Saturday, January 10, 1914, and was placed upon a side track by means of what is known as a "flying switch." Standing upon the side track was another car, and the car in which the said Norris and his property were being transported collided with said car. The car was sent in on the side track with such force that the impact of the cars coming in collision was so great that the partitions, which had been constructed in said car for the separation of the live stock and other property and orderly arrangement thereof for transportation, were torn down, the said Norris, who was 59 years of age, thrown to the floor, and a horse or cow thrown upon his leg, whereby and by reason of being so thrown to the floor, he received injuries to his head, chest, side, and leg. On the day following the accident, just stated, the said J. S. Norris, in company with a man named Hill, started out in a wagon, drawn by two mules and loaded with some of his goods, to the farm which he had bought. Norris, seated upon some hay stacked two bales high in the front end of the wagon, drove the team. When a short distance out of Pottsboro Mr. Norris pitched forward and fell upon the hounds, or rear part of the wagon tongue. The bale of hay upon which he had been seated also fell out of the wagon and upon him as he was lying upon the wagon tongue. The fall of Mr. Norris and the hay frightened the mules drawing the wagon, and they started forward in a very fast walk or trot, and Mr. Norris fell from the wagon tongue to the ground immediately behind the mules. A very short time before he fell from the wagon he remarked to his companion, Hill, who was seated by his side, that he (Norris) was feeling "awful bad," to which Hill replied, "Yes; you look bad." In this connection Mr. Hill testified:

"I looked at him, and he looked pale in the face, kind of pale around the lips, and looked sort of fainty to me; he was just pale all over his face. * * * I mean when I say he looked

pale that he looked white, pale in the face; he seemed a whole lot whiter in the face at that particular time than he had during the morning. At that time he was sitting on the front end of the wagon; that was the same position he had occupied from the time he started out. * * * He was sitting on a bale of hay. * * * At the time he fell off the wagon the mules were traveling slowly, in a moderate walk. There was no rough place in the road that caused him to fall from the wagon. The mules made no stop or start just before he fell off the wagon or at the time he fell."

After Mr. Norris fell from the wagon, and the team caught and stopped, he was assisted into it again by Hill and carried back to Pottsboro, where he was examined by Dr. Hogan and something given him to ease the pain with which he was suffering. Dr. Hogan testified that during the examination he there made Mr. Norris did not complain of any parts of his body hurting except his lower limb and ankle and his left side; that Mr. Norris had a little skinned place on his face, but he was not complaining of that. He further said that Mr. Norris told him that he thought the injury to his left side and ribs was caused by a mule kicking him in the runaway. There was, however, testimony to the effect that Norris received, as a result of the collision of the cars, a cut or skinned place about or above his eye, and that he complained of headache. In a statement secured and reduced to writing by an agent of appellant on Monday following the accidents related, Mr. Norris is made to say, among other things, that he was not injured while in the box car in any part of his body except his left leg and ankle; that when he fell from the wagon he hurt his other leg, side, and face; that his hips were also hurt some, and that he thought one of the mules kicked him in the side. A statement in some respects similar seems to have been procured by the same agent of appellant from Hill, who was with Norris when he fell off the wagon. There is, however, testimony to the effect that the statements made by Mr. Norris and Hill to appellant's agent were not correctly reduced to writing by said agent, and do not reflect the true statements of said parties in most material particulars. After Norris was examined by Dr. Hogan at Pottsboro on Sunday, he was carried to his home and put to bed, where he remained, complaining of his injuries, and a part of the time in a "comatose or dazed condition" until his death, which occurred on Saturday, one week from the date of the accident in the box car. The attending physicians, Drs. Hogan and Parrish, testified that in their opinion Mr. Norris' death was caused by hemorrhage of the brain, one of them, Dr. Parrish, saying that the hemorrhage may have resulted from the injuries received by Mr. Norris in the box car, while Dr. Hogan testified that in his opinion the injury received in the box car, as told to him, could not have caused the hemorrhage; that it would appear reasonable, from the history he learned of Mr. Norris' injuries received in the runaway, that the hemorrhage of the brain from which he died could have been caused from such injuries. The case was tried on the 7th day of November, 1914, and submitted to the jury upon special issues. Upon the findings of the jury on the issues submitted judgment was rendered in favor of the appellees, Americus Norris, widow of J. S. Norris, and Grady and Amelia Norris, children of said J. S. Norris, against appellant, and that the remaining appellees take nothing by their suit. From this judgment appellant perfected an appeal to this court.

[1] The first assignment of error complains of the trial court's action in refusing to give a special charge requested by appellant, directing the jury to return a verdict in its favor. Appellant admitted in the trial of the cause, or it was proved, that the injuries the decedent, Norris, sustained in the box car were the proximate result of its negligence in making the flying switch. It defended on the ground that the deceased, Norris, did not die from those injuries, but from the injuries received when he fell from his wagon while afterwards driving along the road; and the request for the peremptory instruction under consideration and the assertion that it was error to refuse it are predicated upon the theory and claim that there was no evidence introduced that would authorize the conclusion that the death of the said Norris directly and proximately resulted from the negligence of appellant in making the flying switch, or that such negligence was one of the "prominent and efficient causes" of his death; that the evidence affirmatively disclosed that the death of the said Norris directly and proximately resulted from other and intervening causes, namely, injuries received by him falling from his wagon the day following the receipt of the injuries alleged to be due to the negligence of appellant. The proposition is made that "the proximate cause of an event must be understood to be that which in a natural and continuous sequence, unbroken by any new cause, produced that event, and without which that event would not have occurred," and that in the instant case the negligent act of the appellant was the remote and not the proximate cause of the death of Norris. We would not be warranted in holding that the evidence in this case conclusively showed that the sole proximate cause of the deceased's death was an injury, or injuries, received when he fell from his wagon, or that the negligence of appellant in making the flying switch which resulted in injury to him while in the box car the day before was not an efficient cause of his death, but only a remote cause thereof, if cause at all. On the contrary, we think the evidence is sufficient to warrant the conclusion that the negligence of appellant's servants in making the flying switch and the injuries re-

ceived by the said Norris as a result thereof directly and proximately contributed to produce his death. Immediately after getting out of the car in which he was hurt, Norris not only complained of his leg and ankle hurting, but he told the witness Morrison, who heard him groaning and saw a cow lying upon him in the car just after the collision, that he was badly hurt in the breast. According to the testimony of L. D. Hill, as Mr. Norris left the car in which he was injured in search of a doctor—

"he walked with his hands on his hip and limped, and his face was pale, and he appeared to be sick. He was bent over and did not walk straight. He had a little skinned place over his eye, complained of being sick, and said he 'had the headache awful bad.' He further said, 'They made a flying switch in there on me, and throwed my stock on me, and liked to have killed me;' that one of the mules or horses was lying on him; that the horse fell on his leg, and hurt his leg most."

Mrs. Norris, wife of the deceased, testified, in substance, that on Tuesday following the injuries received by Norris, the appellant's agent called at their home and secured a statement from Mr. Norris in regard to the nature of the injuries inflicted upon him in the box car, which was by the agent reduced to writing; that Mr. Norris told the agent that he felt too sick and bad to read; that he did not have his glasses, and could not see very well, and that the agent kept on reading the statement. Mrs. Norris further testified:

"I heard him (Mr. Norris) tell the claim agent about his injuries he got in that car. He said he was thrown down on the floor, and the horses thrown on him, and all the partitions were broken down and the stock all thrown in where he was, and they were all in there together. He said he hurt his head and his chest and his side and his hips and left leg. That is what Mr. Norris told the claim agent while the agent was there taking that statement. I was there on Monday when Dr. Hogan called. I did not hear Mr. Norris make any statement to Dr. Hogan that he didn't get any injury in the box car except to his leg and ankle. I was there, and could have heard it had he told him anything like that. Mr. Norris told the claim agent that he got his leg hurt in the wagon accident. He did not tell him that anything else got hurt in the wagon accident. In making up that statement, the claim agent would just ask Mr. Norris questions, and Mr. Norris would answer them, and the claim agent would write it up in his own way. Mr. Norris would answer the questions by 'Yes' or 'No.' The claim agent did most of the talking."

The foregoing testimony of Mrs. Norris is contradicted by appellant's agent Hodge, who secured the written statement of the deceased, Norris, above referred to in material particulars. Hodge testified, among other things, that Mr. Norris told him that he got his face skinned in the runaway, and that, as he recalled it, he told him that he got his side hurt in the runaway accident. And Dr. Hogan testified that Norris told him that all the injuries from which he was suffering, except the injury to his left limb and ankle, were received by him in the runaway. This witness, being asked whether, in his opinion, the death of Mr. Norris was caused by the injuries he received in the box car or the injuries received in the runaway accident, said:

"Well, just from reasoning, I thought he got the worst shake-up in the runaway, from the nature of it and the injuries he told me about in the car, and the fact that I could not see how such an injury from the box car would cause any brain trouble by itself. The injury received by the box car, as he told it to me, could not have caused it, in my opinion. It would appear reasonable, from the history I learned of his injuries received in the runaway, that the hemorrhage of the brain from which he died could have been caused from that."

Dr. Parrish, who was called in consultation, after having testified that he and Dr. Hogan concluded that Mr. Norris was dying from hemorrhage of the brain, said, in effect, that the collision of the cars and the effect thereof in throwing the deceased, Norris, to the floor of the car in which he was being transported, and the throwing of the cow or horse upon him, could have caused such hemorrhage. Being asked how that occurrence could have brought about such a condition, he answered:

"Well, if a man had received a blow on the head, if he had fallen and struck his head against some solid body, the floor of the car or against the wall of the car, he might have ruptured some vessel in the brain that would have brought about the condition that existed when I saw him."

He further said:

"If his (Norris') head had come in contact with some hard body, the concussion of the cars throwing him down against the floor of the car, and bringing his head in contact with the floor of the car, might have caused such a condition."

Dr. Parrish further testified that he could not tell the condition that Dr. Hogan said he found Mr. Norris in when he first saw him, except that he said Mr. Norris had received the two injuries, and that he was at a loss to determine which one of the injuries was the cause of the condition he was in the night that he (Parrish) saw him; that the conclusion was that the condition existing that night was caused by some injury, but which injury they did not know; that he did not think Dr. Hogan decided which.

We have not attempted to quote or state all the testimony bearing upon the question under consideration, but only so much of it as, notwithstanding the contradictions pointed out, and even though it be conceded that the definition of "proximate cause" as contended for by appellant be substantially correct and as approved by the appellate courts in this and many other jurisdictions, justifies our conclusion that we would not be warranted in holding that the evidence in the case shows beyond controversy that the sole proximate cause of Mr. Norris' death was injuries received when he fell from his wagon, or that the negligence of appellant in making the flying switch was not an efficient cause of his death. The appellees,

after alleging the negligent acts of the appellant upon which they based their right to recover, charged that "said negligent acts, omissions or commissions, either separately or concurrently, was and were the direct and proximate cause of the injuries and death of the said J. S. Norris," and upon the whole testimony submitted to them, the jury, in answer to questions propounded by the court, found that the said Norris did not "die from the injury or injuries he got in the box car and none other"; that he did not "die from the injuries he got at the time he fell off the wagon and none other"; that the injuries he got in the box car did contribute to his death; and that the deceased, Norris, after the injuries were received in the box car, was not guilty of negligence which contributed to his death. The jury further found that the deceased, Norris, was sick and faint while riding on the wagon from which he fell, and that such sickness and faintness resulted directly from the injuries he got in the box car, but that the same did not, directly and proximately, cause him to fall off the wagon. They further found that appellees, in the death of the said J. S. Norris, suffered damages in the sum of $3,750.

[2] The question then is: Was the trial court, under the evidence and the foregoing findings of the jury, authorized to render in favor of appellees the judgment from which this appeal is taken? Appellant contends it was not, and the chief propositions urged in support of its contention, as before indicated, are that the injury received by the deceased, Norris, in the box car can be regarded only as a remote cause of his death, and that to attribute death to two or more concurrent causes, each must be a—

"prominent and efficient cause; for if one of the alleged causes operates slightly with another one, which is the prominent, efficient cause, then the proximate cause of the death should be attached to the latter."

If it necessarily followed as a matter of law upon the undisputed evidence in the case that the injury sustained by the deceased in the box car was a remote cause of his death, or that his fall from the wagon was the sole, proximate cause thereof, then the action of the court in refusing the peremptory instruction requested by appellant was error for which the case should be reversed. We think, however, that the trial court, under the evidence adduced and the findings of the jury, was warranted in entering the judgment it did. If the injuries received by Norris in the box car, as a result of appellant's negligence, and the injuries received by him from the fall off his wagon together were the efficient cause of his death, appellant is liable in damages therefor. In Railway Company v. McWhirter, 77 Tex. 356, 14 S. W. 26, 19 Am. St. Rep. 755, the general rule is announced as follows:

"If an accident occurs from two causes, both due to the negligence of different persons, but together the efficient cause, then all the persons whose acts contribute to the accident are liable for an injury resulting, and the negligence of one furnishes no excuse for the negligence of the other."

This language of our Supreme Court is quoted in Railway Company v. Vollrath, 40 Tex. Civ. App. 46, 89 S. W. 279, in which a writ of error was denied, and it is there said:

"It is not essential that a cause should act alone in order to constitute it the proximate cause; but if it concurs with another cause in producing the result, it will be a proximate cause, and one or both of the instruments setting the cause in motion will be liable for the damages therefrom."

Likewise in the case of Railway Company v. Lynch, 22 Tex. Civ. App. 336, 55 S. W. 389, in which a writ of error was also denied by the Supreme Court, where the plaintiff was injured in a collision between a passenger train and a freight car which had been blown out of a side track by a windstorm, the Court of Civil Appeals for the Fourth District held that a charge, to the effect that if the jury should find that the negligence of the railway company in leaving the car on the side track without its wheels being blocked or brakes set and the high and unprecedented windstorm were concurring causes of the collision and the plaintiff's injuries, was proper. The court in referring to the charge, which was complained of by the appellant, said:

"Its clear import is that, if the windstorm and appellant's negligence in leaving the cars unsecured were concurrent causes, and together were the direct and proximate cause of plaintiff's injury, the railroad would be liable therefor. This we understand to be the law."

In San Marcos Electric Light & Power Co. v. Compton, 48 Tex. Civ. App. 586, 107 S. W. 1151, a telephone company had placed a guy wire on the top of a pole maintained by the electric company, which extended across live wires strung thereon and hung to within a few feet of the ground. The guy wire became charged with the current, and caused the death of a person placing his hand on it, and the court held that the telephone company, in attaching the guy wire and in allowing it to remain in a dangerous position, and the electric company, in not removing the wire, were each guilty of negligence, which was an efficient cause of the entire injury, and were each liable to the full extent of the injury. This is in harmony with the law as announced in Mr. Street's 6th Edition of Shearman & Redfield on the Law of Negligence, § 31. It is there said:

"The mere fact that another person concurs or co-operates in producing the injury or contributes thereto, in any degree, whether large or small, is of no importance. If the injuries caused by the concurrent acts of two persons are plainly separable, so that the damages caused by each can be distinguished, each would be liable only for the damage which he caused; but if

this is not the case, all the persons who contribute to the injury by their negligence are liable, jointly or severally, for the whole damage. It is immaterial how many others have been in fault if the defendant's act was an efficient cause of the injury."

Referring to an action for wrongful death, it is further said in the same section:

"Nor, in such an action, is the defense that the decedent died from an independent disease made out, unless it is clearly shown that he must have died from it, when he did, even if he had not suffered from the defendant's negligent act."

Again, in section 32 of said work, the rule is announced that:

"The connection between the defendant's negligence and the plaintiff's injury may be broken by an intervening cause. In order to excuse the defendant, however, this intervening cause must be either a superseding or a responsible cause. It is a superseding cause, whether intelligent or not, if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury. It is a responsible one if it is the culpable act of a human being, who is legally responsible for such act. The defendant's negligence is not deemed the proximate cause of the injury when the connection is thus actually broken by a responsible intervening cause. But the connection is not actually broken if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation. Of course, the very definition of a superseding cause implies that the defendant's negligence cannot be the cause of the injury."

In section 33, in announcing the distinction between superseding cause and inevitable accident, the same authors say:

"The first alternative needs little comment. It is simply the case of inevitable accident, which has already been considered, with only this difference: That such accident occurs after the defendant has been negligent, and when, perhaps, but for the intervention of that accident, he might have been liable. But it must be carefully noted that inevitable accident, in order to furnish a complete defense in such a case, must be the sole cause of the injury, and therefore that it is no defense if, but for the defendant's negligence, the plaintiff would not have been exposed to injury from such accident; while, if it contributed to any part of the resulting damage, it is only a defense in case that part of the damage can be accurately distinguished from the rest."

That part of the damage caused by the fall of the deceased from his wagon cannot, by any means, be distinguished from the damage that resulted from appellant's negligence.

[3] The question of proximate cause is ordinarily for the jury upon all the facts. But, where the facts are undisputed and the inferences to be drawn from them are perfectly plain and not open to doubt by reasonable men, it is the duty of the court to determine the question as a matter of law. Under the evidence in the case at bar the proximate cause or causes of the death of J. S. Norris was or were issuable fact. The jury could have found that the negligent act of the appellant's servants in making the flying switch was the sole cause of his death, or that such

negligence proximately contributed to cause his death, or that the injuries received by the deceased in the box car and the injuries sustained by him in the fall from the wagon together were the efficient cause; therefore the court properly refused a peremptory instruction for the appellant.

[4] The second assignment of error is, in substance, that the court erred in overruling appellant's motion to set aside the verdict and judgment rendered, because the jury found that the sickness and faintness of the deceased, Norris, while riding upon the wagon from which he fell did not proximately cause him to fall off said wagon. The same propositions are advanced in support of this assignment that are urged to sustain the first assignment just discussed, and the argument made that, unless it was established that the injuries received by J. S. Norris in the railroad accident alone caused his death, appellees were not entitled to recover. We do not, as heretofore indicated, agree with this view. On the contrary, we think the authorities, as contended by appellees' counsel, are to the effect that in an action for wrongful death the connection between the defendant's negligence and the death is broken by an intervening cause only when such intervening cause so entirely supersedes the operation of defendant's negligence that it alone, without the defendant's negligence contributing thereto, produced the result. Or if this is stating the rule too broadly, then if the injuries received in consequence of a defendant's negligence and the injuries received as a result of an intervening cause, together are the efficient cause of the death, the defendant will be liable. It was admitted or conclusively shown that the injuries received by the deceased in the box car resulted proximately from the negligence of the appellant's servants in making the flying switch, and the jury found, upon evidence authorizing such findings, that such injuries contributed to cause the death of the said Norris; that the deceased, Norris, did not die exclusively from the injuries sustained at the time he fell from the wagon; and that he was not guilty of contributory negligence. The jury further found that neither the injuries received by the deceased in the box car nor the injuries received by him in falling from the wagon alone caused his death. The effect then of their findings is that the injuries received in the two accidents were together the efficient cause of Norris' death. So if these causes were together the efficient cause of J. S. Norris' death, then the appellant is liable, and may be required to respond in damages therefor, even though the sickness or faintness with which the said Norris was suffering just before he fell off the wagon did not proximately cause such fall. The issue as to whether or not the injuries received by the deceased in the box car and in his fall from the wagon were together the efficient cause of

his death was not submitted by the court to the jury, nor did the appellant request the submission of such issue. Our statute provides, in the event the case is submitted on special issues, that the failure to submit any issue shall not be deemed a ground for reversal of the judgment, upon appeal or writ of error, unless its submission has been requested in writing by the party complaining of the judgment. In such case an issue, not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment; provided there be evidence to sustain such a finding. Vernon's Sayles' Texas Statute, art. 1985. The evidence disclosed by the record is sufficient to sustain a finding that the injuries received in the box car and those suffered as a result of his fall off the wagon by the deceased together were the efficient cause of his death. Therefore, applying the statutory rule referred to, even if the effect of the jury's findings were not sufficient, it must be presumed that the trial court found said issue in accordance with the contention of appellees, which supports the judgment rendered, and not in accordance with the contention of appellant. It follows that appellant's motion to set aside said judgment was properly overruled.

[5, 6] The third and fourth assignments of error are grouped in the brief. The third is that the court erred in overruling appellant's objection to and in submitting the following issue:

"Did the injuries got in the box car contribute to cause the death of the deceased?"

It is claimed that it was error to submit this issue because the answer to the question would fix no liability upon the appellant. Even if this contention is correct, the submission of the issue furnishes no ground for a reversal of the case. But there was no error in submitting the issue in the language used. A charge which authorized a recovery if the negligence alleged merely contributed to the result was held to state correctly the general rule that a recovery could be had for negligence which caused, or contributed to the result. Railway Company v. Josey, 95 S. W. 688; Railway Company v. Groner, 43 Tex. Civ. App. 264, 95 S. W. 1118. In the first case cited the court said:

"It [the negligence] would not have to be the sole cause, but would be sufficient if it be one that contributes to the result."

The fourth assignment is that the court erred in refusing to give the following special charge, requested by appellant:

"To attribute death to two or more concurrent causes each must be a prominent and efficient cause; for if one of the alleged causes operates slightly with another one, which is the prominent, efficient cause, then the proximate cause of the death should be attached to the latter."

This charge could have been of no material aid to the jury in determining the question of fact submitted to them. It is but a declaration of law which, since the case was submitted on special issue, could only be applied by the court to the facts found. The appellant did not request, and the issue as to whether the injuries sustained by the deceased in the box car were a "prominent and efficient" cause of his death was not submitted to the jury.

[7] The fifth and sixth assignments of error were properly refused, because both of them simply embodied abstract propositions of law, neither of which could have been of any assistance to the jury in determining the questions submitted to them, as they were required to return a special verdict. So far as the definition of "proximate cause," as contained in the special charge No. 9 refused, is concerned, it is sufficient to say that the same definition was given in connection with one of the special issues submitted by the court.

[8] The seventh assignment of error complains of the court's refusal to submit this issue:

"Did the injuries received by the deceased, J. S. Norris, as a result of the collision with the box car directly and proximately, in a natural and continuous sequence and unbroken by a new cause, produce his death?"

The only proposition submitted under this assignment is:

"The question as to whether the negligence of the railroad was the direct and proximate cause of the death of J. S. Norris was one for the jury, and the trial court erred in not submitting the same to the jury."

We think there was no reversible error in refusing to submit this issue. If the injuries received by the deceased as a result of the collision with the box car in which he was transported to Pottsboro and the injuries he sustained in falling from his wagon together were the efficient cause of his death, then appellant cannot escape responsibility for said Norris' death. In such a case—

"all the persons whose acts contribute to the accident are liable for an injury resulting, and the negligence of one furnishes no excuse for the negligence of the other." Railway Company v. McWhirter, supra.

The following questions, among others, were asked the jury:

"Did the deceased, Norris, die from the injury or injuries he got in the box car, and none other?"

"Did the deceased, Norris, die from the injuries, if any, he got at the time he fell off the wagon and none other?"

Both of these questions received a negative answer. It is therefore manifest that the jury was of the opinion from the evidence that neither the injuries received by the deceased in the box car nor the injuries received by him as a result of his fall from the wagon were the sole cause of his death, but together, that is, the concurring effect of the injuries received in the two accidents, were the efficient cause of his death. And this is the effect of their findings that the deceased

did not die from the injuries received in either accident alone. For it follows that if the death of the deceased was not caused solely by the injuries received by him from his fall off the wagon, then as his death could not be attributed under the evidence to any other cause, it was caused by the concurring effect of the injuries sustained in the two accidents, and each of said injuries was necessarily an efficient cause thereof. Therefore the injuries inflicted upon the deceased in the box car through the negligence of the appellant was not, according to the findings of the jury, a remote cause, but an efficient concurring cause of his death, and the appellant is liable for the damages sustained as a result thereof, although the injuries subsequently received as a result of his fall off the wagon likewise proximately concurred in producing the said Norris' death. The issue sought to be submitted was, in effect, perhaps calling on the jury to determine whether or not the injuries received by the deceased in the box car were the sole proximate cause of his death, but if such was not its effect, it ought not to have been submitted, under the evidence in this case, in the form offered. The controlling question in the case, as we view it, was whether the injuries received by the deceased in the box car, together with the injuries received by his fall from the wagon, were the efficient cause of Norris' death; and, had the question refused been submitted and answered in the negative, the same judgment that was rendered by the court would have been authorized and supported by the evidence and other findings made in the case. The refusal to submit the question, therefore, was harmless.

[9] The last assignment of error is that the court erred in refusing to submit this issue:

"Would the death of J. S. Norris, deceased, have occurred but for the injuries received by him in the runaway?"

There was no error in refusing to submit this issue. If it had been submitted, neither an affirmative nor a negative answer would have relieved the appellant from liability occasioned by its negligence, since it cannot excuse itself from the results of its negligence by simply showing that such results alone were not sufficient to cause the death of the deceased. If the results of its negligence and the injuries received by the deceased in the fall off his wagon together were the efficient cause of his death, and the jury have said, in effect, they were, then the appellant is liable, although neither of such injuries alone would have caused the said Norris' death.

On the whole case our conclusion is that the assignments disclose no reversible error; that the judgment is supported by the evidence, and should be affirmed. It is therefore accordingly so ordered.

Affirmed.