Steven D. DONNELL, Appellant,

v.

SPRING SPORTS, INC. d/b/a Softball
Plus and Sidney Wammack,
Appellees.

No. 01–94–00492–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 15, 1996.

James P. Grantham, Steve A. Bryant, Houston, for appellant.

Joseph R. Messa, Houston, for appellees.

Before ANDELL, HUTSON–DUNN and DUGGAN,[1] JJ.

## OPINION

ANDELL, Justice.

In this appeal, we are asked to decide whether the absence of security guards at a softball field was a proximate cause of inju-ries sustained by the appellant, Steven Don-nell, during a softball game in which he was playing. Donnell complains that the trial court erred in granting the appellee, Spring Sports, Inc. d/b/a Softball Plus, a take-noth-ing summary judgment against him and in denying his counter-motion for partial sum-mary judgment against Spring Sports. Ad-ditionally, Donnell appeals the trial court's dismissal of his cause against appellee Sidney Wammack, the opposing team's manager, for want of prosecution.

We affirm the trial court's summary judg-ment in favor of Spring Sports and the denial of Donnell's counter-motion for partial sum-mary judgment against Spring Sports. However, we reverse the judgment in part and remand the case as to Donnell's claim against Sidney Wammack.

### Background

On the evening of August 18, 1991, Donnell was pitching for the softball team "Ground Zero" against the team "Ten White Guys and a Mexican." The game was played at Soft-ball Plus, a softball park owned by Spring Sports. During the game, Donnell got into a fight with members of the opposing team and sustained the following injuries: (1) a bruised kidney that had to be removed; (2) a torn intestine; (3) a bruised liver; (4) internal bleeding; (5) two black eyes; and (6) lacera-tions to the head. Donnell sued "Ten White Guys and a Mexican" and Wammack for negligence and gross negligence based on the use of force and profane language against Donnell. He sued Spring Sports for negli-gence and gross negligence based on failure to maintain proper security on the premises.

Spring Sports filed a motion for summary judgment on March 4, 1994, asserting various defects in Donnell's pleadings. Additionally, Spring Sports alleged that it breached no duty to Donnell and that the lack of security was not the proximate cause of Donnell's injuries.

Donnell amended his pleadings to cure some of the defects challenged by Spring Sports and added a cause of action against

1. Justice Duggan, who retired on December 31, 1994, continues to sit by assignment for the dis-position of this case, which was submitted prior to that date.

Spring Sports for negligence *per se*—violation of the Alcoholic Beverage Code. Donnell also filed a counter-motion for partial summary judgment against Spring Sports, arguing that he had conclusive summary judgment proof on each element of his negligence cause of action.

The trial court granted Spring Sports' motion for summary judgment and denied Donnell's motion for partial summary judgment without specifying its reason for either ruling. The court ordered Donnell's case against Wammack dismissed for want of prosecution. Later, Donnell filed a non-suit in the trial court against "Ten White Guys and a Mexican" and obtained a written order from the court dismissing the team from the lawsuit.

### Standard of Review

In point of error one, Donnell contends the trial court erred by granting Spring Sports' motion for summary judgment and denying his counter-motion for partial summary judgment. Donnell argues: (1) issues of material fact exist; (2) Softball Plus breached a duty to protect him against reasonably foreseeable injuries; (3) section 69.13 of the Alcoholic Beverage Code may establish a common law duty; and (4) Softball Plus was negligent *per se* by violating the Alcoholic Beverage Code.

When both parties move for summary judgment and the trial court grants one motion and denies the other, the party that did not prevail may appeal the granting of the other party's motion as well as the denial of its own motion. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). Thus, on an appeal of counter-motions for summary judgment, each party must carry its own burden as the movant and, in responding to the other party's motion, as the non-movant. *James v. Hitchcock Indep. Sch. Dist.,* 742 S.W.2d 701, 703 (Tex.App.—Houston [1st Dist.] 1987, writ denied). The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). If the movant succeeds in sustaining its burden, the burden shifts to the non-movant to produce summary judgment evidence sufficient to create a fact issue. *See Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989).

On appeal, we must make all reasonable inferences and resolve all doubts in favor of the nonmovant. *University of Tex. Health Science Cent. v. Big Train Carpet, Inc.,* 739 S.W.2d 792, 792 (Tex.1987). When counter-motions are before the trial court, the court may consider all the summary judgment evidence in deciding whether to grant each motion. *Rose v. Baker & Botts,* 816 S.W.2d 805, 810 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

When a trial court's order does not specify the grounds relied upon for its ruling, the summary judgment will be affirmed if any of the theories advanced are meritorious. *Insurance Co. of N. Am. v. Security Ins. Co.,* 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ). Although we must separately consider the trial court's disposition of each motion, we begin by reviewing all of the summary judgment evidence before the court at the time it reviewed both motions. *Rose,* 816 S.W.2d at 810.

### Appellant's Summary Judgment Evidence

In his deposition, Donnell testified he paid $1 to enter the park and received a ticket that was redeemable at the concession stand for a small beer or soda. He redeemed his ticket for a beer before the first game.

Donnell said "Ground Zero" played games at Softball Plus for at least a year before this incident without getting into any fights. The fight happened during the middle of the second game of the evening when "Ground Zero" was losing by seven or eight runs. "Ten White Guys and a Mexican" was at bat and Donnell was pitching for "Ground Zero." There was a runner on third base. As Donnell went to catch an infield fly, the ball spun out of his glove and onto the ground. The runner on third base advanced toward home plate. Donnell picked up the ball and, after realizing he could not make a play at first base, looked toward home to make a play. As he turned to throw the ball, Donnell saw that the catcher was not behind home plate. The runner advancing toward home stopped

several feet short of the plate and began to "dance" and taunt Donnell. In frustration, Donnell threw the ball at the runner and hit him in the side or somewhere in his midsection.

Donnell then turned and walked toward the dugout. As he crossed the third base line into foul territory, Donnell was hit in the back and knocked to the ground. Several members from the other team hit and kicked him. Although he tried to protect his head with his arms, Donnell remembered getting beaten around the head and midsection. After he stood up, he sustained a final blow to the face that nearly knocked him unconscious. Donnell did not remember how the fight ended, but he returned to finish the game.

Evette Donnell, appellant's wife, stated in an affidavit she attended several of her husband's games and was there the night of the fight. She testified: (1) her husband paid to gain admittance to the park and to play on the team; (2) Softball Plus had been the site of a number of past disorderly occurrences; (3) alcohol was served at the games and consumed by the players and spectators; (4) "Ten White Guys and a Mexican" were using profanity and appeared intoxicated before the game in which her husband was injured; (5) "Ten White Guys and a Mexican" had a reputation for aggressiveness and intimidation and had been involved in confrontations with other teams when profanity had been used and scuffles had occurred; and (6) she did not see any security guards monitoring the field on the night of the fight or at any other games.

### Appellee's Summary Judgment Evidence

R.C. Sanchez, an umpire of the game in which Donnell was injured, stated in deposition he had served as an umpire for "Ten White Guys and a Mexican" at other games and the players had always conducted themselves in a sportsmanlike manner. Sanchez testified that the incident in question occurred in the following manner: A batter from "Ten White Guys and a Mexican" hit an infield fly that touched the ground before Donnell had a chance to catch it. The runner from third base, before scoring, stopped to taunt his opponents. After the play was over and the base runner was walking to his dugout, Donnell picked up the ball and threw a line drive that hit the runner in the back. Sanchez testified that, in his opinion, Donnell threw the ball with the intent to hurt the base runner. As the base runner turned around, Donnell said something to him. The base runner and Donnell ran toward each other and met in front of the mound, where they began fighting. Although both teams immediately joined the fight, Sanchez testified the fight lasted no longer than one-and-a-half minutes. Both teams returned to complete the game.

Sanchez said he would have ejected Donnell from the game for hitting another player with the ball, but the fight started too quickly for him to do so. He noted that park rules prohibited umpires from breaking up fights, and said he did not know who was supposed to break up fights. Finally, Sanchez stated that he had observed 10 to 12 small fights while umpiring games at *other* ball parks, but none as serious as this incident.

Wammack, the manager for "Ten White Guys," stated in deposition his team had played "Ground Zero" before without any problems. Wammack testified that although both teams entered the field when the fight began, Donnell and the base runner were the only two individuals actually involved in the fight. Wammack said the fight occurred so quickly that there was nothing the umpires could have done to prevent it from happening. Further, he said the confrontation between the two teams lasted no longer than a minute before it was broken up by the umpires.

Donald R. Millik testified in deposition that Softball Plus employed a night manager to take phone calls and deal with customers, four concessionaires to serve food and beverages at the games, a ticket booth employee to take the entry fee at the park's entrance, and daytime maintenance crews. Millik also stated that the park's umpires were independent contractors hired by the teams and Spring Sports did not hire an independent security firm to monitor games. Softball Plus did not post any park rules before this incident in which Donnell was injured.

## Negligence and Gross Negligence

■ There are three essential elements to a negligence cause of action: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from that breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). In determining whether Spring Sports was negligent, we must consider whether: (1) the company had a duty to protect Donnell; (2) the company breached that duty by not supplying on-site security; and (3) the breach of any duty owed to Donnell was a proximate cause of his injuries.

■ Duty is the threshold inquiry in any negligence case. *Phillips*, 801 S.W.2d at 525. The duties owed by a landowner depend upon the status of the person injured on the premises. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex.1975). It is clear that Donnell was an "invitee"—a person on Spring Sports' premises in response to an express or implied invitation for mutually beneficial business purposes. *See Allright, Inc. v. Pearson*, 711 S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1986), *aff'd in part and rev'd in part on other grounds*, 735 S.W.2d 240 (Tex.1987).

■ The general rule is that a premises owner has no duty to protect an invitee from the criminal acts of a third party who does not act under the owner's control or supervision. *Haight v. Savoy Apartments*, 814 S.W.2d 849, 853 (Tex.App.—Houston [1st Dist.] 1991, writ denied). However, an exception to this rule arises when the third party's conduct is a foreseeable result of the premises owner's negligence.

■ When such conduct is foreseeable, the premises owner has a duty to take reasonable measures to prevent injuries to others if it appears or should appear to him that others in the exercise of their lawful rights may be injured. *Id.* Determining if a breach of a duty is the proximate cause of damage involves examining several interrelated factors, the most important of which are the foreseeability of the risk and the remoteness of the cause. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987).

## Proximate Cause

■ Proximate cause consists of both cause in fact and foreseeability. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995). Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury which would not have otherwise occurred. *Id.* Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Nixon*, 690 S.W.2d at 549–50. Although the conduct of a third party may be a superseding cause that relieves the negligent actor of liability, the actor's negligence is not superseded and will not be excused when the conduct is a foreseeable result of such negligence. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992).

■ Determining whether a defendant's negligence was a proximate cause of a plaintiff's damages has generally been characterized as a fact issue, to be decided by a jury. *See, e.g., El Chico*, 732 S.W.2d at 315. However, several cases recently decided by the Supreme Court of Texas have determined proximate cause as a matter of law, not fact. In *Allbritton*, the court of appeals reversed a summary judgment granted to the defendant, holding that the plaintiff had raised fact issues about proximate cause; the Supreme Court of Texas reversed the court of appeals, holding there was no legal causation as a matter of law. 898 S.W.2d at 774. In *Doe v. Boys Clubs of Greater Dallas, Inc.*, the Supreme Court of Texas assumed, without deciding, that the Boys Club owed a duty to plaintiff to exercise reasonable care in investigating personnel and that it breached that duty. 907 S.W.2d 472, 477 (Tex.1995). But in affirming summary judgment granted to the defendants, the court held that the Boys Club had proved as a matter of law its conduct was not the cause in fact of plaintiff's injuries. *Id.* at 475.

■ Legal cause is not established if the defendant's conduct does no more than furnish the condition that makes the plaintiff's injury possible. *Allbritton*, 898 S.W.2d at 775. If the connection between the defen-

dant and the plaintiff's injuries is too attenuated, then legal cause is not established. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 472 (Tex.1991).

### 1. Foreseeability

We assess all the summary judgment evidence that was before the trial court to determine if the acts of "Ten White Guys and a Mexican" and Wammack were foreseeable. When counter-motions are before the trial court, the trial court may consider all the summary judgment evidence in deciding whether to grant each motion. The summary judgment evidence consisted of the following:

(1) Donnell testified in deposition that "Ground Zero" played games at Softball Plus for at least a year before the incident in question without engaging in any fights.

(2) Sanchez testified in deposition that he had umpired previous games for "Ten White Guys," and they conducted themselves in a sportsmanlike manner.

(3) Sanchez also testified he had seen 10 to 12 small fights while umpiring games at other ball parks but had never witnessed a fight "like this one" before.

(4) Wammack testified in deposition that "Ten White Guys and a Mexican" had played "Ground Zero" before without fighting.

(5) Donnell, Sanchez, and Wammack testified the fight occurred after Donnell threw a ball that hit a base runner for "Ten White Guys."

(6) Sanchez and Wammack both testified the fight started very quickly and was broken up very quickly—it lasted only 45 to 90 seconds.

(7) Sanchez testified he would have ejected Donnell from the game for having hit an opposing player with the softball, but the fight erupted within seconds of that act.

(8) Donald Millik testified in deposition that before this incident, no rules were posted at the ball park prohibiting alcohol, profanity, or physical abuse, and Spring Sports did not employ security guards.

(9) Evette Donnell submitted an affidavit in which she testified:

(a) Softball Plus had been the site of a number of past disorderly occurrences.

(b) Alcohol was served at the games and consumed by the players and spectators.

(c) "Ten White Guys and a Mexican" appeared intoxicated before the game in which her husband was injured.

(d) "Ten White Guys and a Mexican" had a reputation for aggressiveness and intimidation and had been involved in confrontations with other teams when profanity had been used and scuffles had occurred.

(e) She saw no security guards at the game on the night of the fight or at any other game.

■■■ In its response to Donnell's counter-motion for partial summary judgment and on appeal, Spring Sports argues Evette Donnell's affidavit was hearsay, not based on personal knowledge, and contained improper conclusory statements. The trial court did not rule on the objection; thus, the complaint is waived. TEX.R.APP.P. 52(a).

### 2. Cause in Fact

■■■ Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury, which would not have otherwise occurred. *Allbritton,* 898 S.W.2d at 774. Donnell argues Spring Sports was negligent by permitting the concessionaire to sell alcohol and by not supplying on-site security. He claims Spring Sports breached its duty to protect him from the harm he suffered. Even if we assume Spring Sports was negligent in selling beer at the concession stand, we cannot say that, but for the sale of beer, Donnell would not have been beaten. Nor are we persuaded that the absence of security guards was the cause in fact of Donnell's injuries.

We do not believe the presence of guards would either have prevented this fight from occurring, or brought it to an end any sooner than the players themselves managed to halt it. While the presence of security guards could deter the criminal act of a third party seeking an easy opportunity to commit a crime, we cannot conclude from this that their presence would deter fights between

participants in a hotly contested athletic endeavor. In addition, the ferocity of this fight and the severity of Donnell's injuries were extraordinary. While small scuffles may have been foreseeable, a fight of this kind was not. Accordingly, we hold as a matter of law the evidence was not sufficient to establish that Spring Sports' action or omission proximately caused Donnell's injuries.

### Negligence Per Se

■ Donnell also contends the trial court erred in granting Spring Sports' motion for summary judgment on his negligence *per se* cause of action. He argues that Spring Sports committed negligence *per se* by violating section 2.02 of the Alcoholic Beverage Code, which imposes liability on commercial sellers of alcoholic beverages for damages resulting from the sale of alcohol to obviously intoxicated adults. TEX.ALCO.BEV.CODE ANN. § 2.02 (Vernon 1995). Donnell also argues that Spring Sports was negligent *per se* by violating section 69.13 of the Code. TEX. ALCO.BEV.CODE ANN. § 69.13 (Vernon 1995). Section 69.13 is an administrative provision authorizing the cancellation of a liquor license if a breach of the peace occurs on the licensee's premises as the result of improper supervision. We disagree with both of Donnell's contentions. Donnell's cause of action under a negligence *per se* theory is precluded by section 2.03 of the Code, which provides that the dram shop statute is the *exclusive* basis for the civil liability of commercial providers of alcohol. TEX.ALCO.BEV.CODE ANN. § 2.03 (Vernon 1995); *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex.1993).

We hold that the trial court did not err in granting Spring Sports' motion for summary judgment on Donnell's negligence *per se* cause of action.

### Counter-motion for Partial Summary Judgment

Donnell also contends in point of error one the trial court erred in denying his counter-motion for partial summary judgment on his negligence cause of action. We have already held that the trial court did not err in granting summary judgment against Donnell on his negligence and negligence *per se* causes of action. Therefore, we hold that the trial court did not err in denying Donnell's counter-motion for partial summary judgment.

■ In point of error two, Donnell argues the trial court erred when it granted summary judgment based on his defective pleadings without giving him an opportunity to replead. Yet he concedes that he had amended his pleadings to cure the alleged defects long before the trial court granted summary judgment against him. Therefore, we hold that the trial court did not err in granting summary judgment based on the amended pleadings in the record.

We overrule Donnell's first and second points of error.

### Dismissal for Want of Prosecution

Donnell contends in point of error three the trial court erred in dismissing his claim against Wammack for want of prosecution. The record indicates that the judge who originally presided over the case, the Honorable Harriet O'Neill, ordered both parties to complete a joint case information form. Judge O'Neill's letter to the parties stated failure to file the form would result in dismissal or sanctions. Despite the court's warning, Wammack's counsel never complied with the order.

On April 22, 1994, the trial court granted Spring Sports' motion for summary judgment and denied Donnell's motion for partial summary judgment against Spring Sports. Donnell's cause of action against Wammack was not included in either motion. On April 26, 1994, James Grantham, counsel for Donnell, and Michael Cooper, counsel for Wammack, appeared before the Honorable Jack O'Neill, a visiting judge, for a court hearing. The following exchange took place at the hearing:

> **The Court:** The matter of discovery has been presented to the Court. An offer has been made by defendants' counsel for his acceptance of those witnesses not designated except in the pretrial order and the defendant—how does the defendant say?
>
> **Mr. Grantham:** Plaintiff, your Honor.
>
> **The Court:** Plaintiff, I'm sorry.

**Mr. Grantham:** Your honor, I would object to him calling any witnesses that are not listed on his pretrial order. He has not filed one.... [U]nder the court's ruling, or under the court's order it does require all parties to participate. He failed to participate. As to this date he still has not filed a joint pretrial ... stipulation or orders.

**The Court:** This is a 1992 filed case and it's been on the trial docket in the 152nd District Court for almost a week and a half. Do I hear a motion to dismiss?

**Mr. Cooper:** Yes, Judge, if they're not announcing ready for trial we do move the case be dismissed for want of prosecution.

**The Court:** Motion is granted.

■ Donnell argues the record implies the court's dismissal was actually against Wammack. To support his argument, he relies on the following facts: (1) Wammack's counsel never complied with Judge Harriet O'Neill's order; (2) Judge Jack O'Neill, a visiting judge, was unfamiliar with the parties.

The court's order dismissing the case explicitly states Donnell's cause of action against Wammack was dismissed for want of prosecution based on his refusal to announce ready for trial. It is also clear from the record that the court understood it was Wammack's counsel, Michael Cooper, who was seeking dismissal for want of prosecution. Therefore, we hold there is no evidence in the record to support Donnell's contention that Judge Jack O'Neill actually intended to dismiss Wammack's case instead of Donnell's.

■ Generally, the standard of appellate review of a dismissal for want of prosecution is whether the trial court clearly abused its discretion. *State v. Rotello,* 671 S.W.2d 507, 509 (Tex.1984) (quoting *Bevil v. Johnson,* 157 Tex. 621, 307 S.W.2d 85, 87 (1957)). However, Donnell offers an alternate argument: the court's dismissal violated due process and the Texas Rules of Civil Procedure because he was not given proper notice. Due process requires that adequate notice be given before an order is entered dismissing a suit for want of prosecution.

*Hubert v. Illinois State Assistance Comm'n,* 867 S.W.2d 160, 163 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Tramco Enter. v. Independent Am. Sav. Ass'n,* 739 S.W.2d 944, 948 (Tex.App.—Fort Worth 1987, no writ).

■ We hold Donnell did not receive adequate notice before Judge Jack O'Neill dismissed his case for want of prosecution. The record shows Donnell's counsel was caught off-guard and given virtually no chance to respond to Wammack's verbal motion to dismiss for want of prosecution at the prompting of the court. Contrary to the statement in the court's order, the statement of facts from the hearing indicates Donnell was not asked whether he was ready to proceed to trial. Based on these circumstances, we hold the trial court abused its discretion in dismissing Donnell's cause of action against Wammack for want of prosecution.

We sustain Donnell's third point of error.

We affirm the trial court's judgment granting Spring Sports' motion for summary judgment and denying Donnell's counter-motion for partial summary judgment. We reverse the judgment dismissing Donnell's case against Wammack for want of prosecution and remand that cause for further proceedings.

HUTSON–DUNN, J., dissents.

HEDGES, J., requested a vote to determine if the case should be heard *en banc,* pursuant to Tex.R.App.P. 79(d), (e) and Tex.R.App.P. 90(e).

COHEN, MIRABAL, WILSON, ANDELL, TAFT, and DUGGAN, JJ., voted against *en banc* consideration.

OLIVER–PARROTT, C.J., did not participate.

HEDGES and O'CONNOR, JJ., dissented from the denial of *en banc* consideration.

O'CONNOR, J., joins Justice HUTSON–DUNN's dissent.

HUTSON–DUNN, Justice, dissenting.

I respectfully dissent because, based on the summary judgment evidence presented

in this case, I feel that there is a question of fact as to duty as well as causation.

Affidavits demonstrate that alcohol was served by the appellees, and drinking encouraged by giving a free drink, beer or wine, with each ticket. Alcohol was consumed by the players and spectators. On the day of the fight, members of the team, Ten White Guys and a Mexican, were drinking, using profanity, and already appeared intoxicated before the game. There were no rules, security or anyone available to control or supervise tense situations; situations that one could foresee as probably becoming exacerbated by the unsupervised and uncontrolled drinking by the teams as well as the spectators. Referees were told not to interfere in fights. The team that was involved in this fight was known for its aggressiveness. It had a reputation for intimidation and confrontations with other teams. Other fights and scuffles had occurred involving this team.

The injuries this man sustained were extreme and serious. With no one to assist him he could do nothing except assume a fetal position while an entire team beat and kicked him. He was rendered in an unconscious state, attempted to get up and was knocked down again. He was kicked in the head and midsection, lost his kidney, his intestine was torn, he sustained a bruised liver, had internal bleeding, injuries to and around the eyes, and lacerations to the head.

I agree that scuffles occur in games of this type, but with introduction and promotion of the additional element of alcohol by Spring Sports there is a question of fact as to whether of not his injuries would have been as serious if there had been someone to intercede in his behalf or if there had been no alcohol or drinking encouraged by Spring Sports. There is a question of fact as to whether Spring Sports' was a substantial factor in bringing about the serious and extensive injuries that the appellant sustained.

I would reverse the judgment of the trial court and remand this case for further proceedings.