**Mr. And Mrs. Alan D. BOGGS, individually and as Parents and Representatives of the Estate of Alan A.H. Boggs, Deceased, Appellants,**

v.

**BOTTOMLESS PIT COOKING TEAM; Bill Gaskey, Individually and d/b/a Bottomless Pit Cooking Team, Houston Livestock Show and Rodeo, Inc., World Championship Barbecue Contest Committee, a Division of the Houston Livestock Show and Rodeo, Inc., Bayou Teche Enterprise, and Corral Club, Inc., a Division of the Houston Livestock Show and Rodeo, Inc., Appellees.**

No. 14–98–01258–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 27, 2000.

Richard Warren Mitoff, Michael L, Phifer, Richard P. Hogan, Houston, for appellants.

Bruce C. Gaible, Susan C. Stevenson, Houston, for appellees.

Panel consists of Justices CANNON, DRAUGHN, and LEE.*

## OPINION

BILL CANNON, Justice (Assigned).

Appellants appeal from a summary judgment granted appellees on their causes of action for the wrongful death of their son, Alan A.H. Boggs (Alan). In two points of error, or issues, appellants contend the trial court erred in granting summary judgment for appellees because: (1) there was a genuine issue of material fact concerning the foreseeability that violence would be committed by an intoxicated person; (2) the trial court wrongly placed the summary judgment burden of proof on the nonmovant appellants.

### Factual and Procedural Background

Alan and his girlfriend, Misty Robertson (Misty), attended a barbecue cook-off at the Astrodome on February 9, 1996, and they left shortly after midnight. As they were pulling out of the parking lot in Alan's truck, Alan rear-ended a Nissan Maxima. Alan got out of the truck and inspected the damage; the truck was undamaged, but the Maxima had a bumped fender and a broken taillight. Alan asked Misty to get the insurance information out of the glove box, and she began exchanging information with the driver of the Maxima and one of the female passengers. By this time, all of the passengers, including Barry Bergeron, had gotten out of the car, yelling that the car was new.

Bergeron started an argument with Alan, calling him a "f——g cowboy." Alan and Bergeron briefly exchanged insults when suddenly Alan threw a punch at Bergeron, knocking him to the ground. Alan and Bergeron briefly struggled on the ground with Alan on top. Alan was much bigger than Bergeron, and Bergeron stated he was scared. While they were wrestling on the ground and hitting each other with their fists, Bergeron pulled a knife out of his pocket that had a three-inch blade. Bergeron said he stabbed Alan in the leg, and just wanted to keep Alan away. Alan continued trying to get at Bergeron, and Bergeron was able to momentarily push him up and off with his foot. As Alan came back at Bergeron, he "pointed" the knife at Alan. The knife entered Alan's chest and pierced his heart; Alan died at the scene. Bergeron was convicted of murder and sentenced to 20 years imprisonment, and his conviction was affirmed on appeal. *See Bergeron v. State*, 981 S.W.2d 748 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd).

Appellee Bottomless Pit operated a booth at the Houston Livestock Show and Rodeo at the Astrodome, and sold beer and liquor to people attending the barbecue cook-off. Bergeron testified that he bought 8 to 10 beers at the booth with tickets given to him by his friend, Larry Rumley, but stated he wasn't staggering or slurring his speech. Bergeron testified that he was at the Bottomless Pit booth until 11:00 p.m. Alan was murdered by Bergeron shortly after midnight on the Astrodome parking lot near the Kirby exit.

* Senior Justices Bill Cannon, Joe L. Draughn, and Norman Lee sitting by assignment.

Appellants sued appellees to recover damages for the wrongful death of their son, Alan, and alleged: (1) appellees were negligent in failing to establish and enforce guidelines for serving alcoholic beverages; (2) appellees were negligent in failing to provide adequate security on the premises; and (3) appellees served Bergeron with an alcoholic beverage when he was "obviously intoxicated to the extent that he presented a clear danger to himself and others," and Bergeron's intoxication was a proximate cause of Alan's death. TEX. ALCO. BEV. CODE ANN. § 2.02(b) (Vernon 1995 & Supp. 2000) (dram-shop law).

Appellees Bottomless Pit, Houston Livestock Show & Rodeo, Inc., and World Championship Barbecue Contest Committee, filed their summary judgment motion on the grounds that: (1) they were not liable for failing to provide security on the premises where Alan was killed because they did not own, occupy or control the premises and had no responsibility for providing security to the premises; (2) they were not liable under the dram-shop law for selling alcoholic beverages to Bergeron because such negligence, if any, was not a proximate cause of Alan's death; (3) they were not liable for common law negligence for failing to provide adequate guidelines for serving alcoholic beverages because the liability of providers to intoxicated persons is governed exclusively by Chapter 2, Texas Alcoholic Beverage Code (dram-shop law).

After appellees Bottomless Pit, Houston Livestock Show & Rodeo, Inc., and World Championship Barbecue Contest Committee (Bottomless Pit, et al.) filed their motion for summary judgment, appellants filed their response to that motion along with their second amended original petition, adding appellees Bayou Teche and Corral Club, Inc., as parties. The trial court had an oral hearing on the summary judgment motion of appellees Bottomless Pit, et al., and granted the motion without specifying the grounds on July 27, 1998. Thereafter, Bayou Teche and Corral Club, Inc., filed their motion for summary judgment on the same grounds as the earlier motion by Bottomless Pit, et al. The trial court granted this motion without specifying the grounds on September 29, 1998.

## Standard of Review

The standard we follow when reviewing a summary judgment is well-rehearsed. Summary judgment is proper only when the movant establishes there are no genuine issues of material fact and proves he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). To be entitled to summary judgment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense to each claim. *See American Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). In deciding whether there exists a disputed fact issue precluding summary judgment, we treat evidence favorable to the nonmovant as true and indulge all reasonable inferences in the nonmovant's favor. *Id.*

A summary judgment may be affirmed on any of the movant's theories which has merit. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 627 (Tex. 1996). Appellate courts should consider all grounds for summary judgment the movant presented to the trial court when properly preserved for appeal and necessary to final disposition of the case. *Id.* When a summary judgment order does not specify the grounds upon which the ruling was made, the reviewing court will affirm the judgment if any one of the theories advanced in the motion are meritorious. *See State Farm Fire & Cas. Co.* v. *S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Hall v. Tomball Nursing Ctr., Inc.,* 926 S.W.2d 617, 619 (Tex.App.—Houston [14th Dist.] 1996, no writ).

## The Summary Judgment Evidence

On appeal, appellants only contest the granting of the summary judgment for all

appellees on the issue of foreseeability. They assert that whether any intervening cause relieves appellees of liability is a fact issue for the jury. Appellants do not address the remaining two grounds (premise security and common law negligence). Appellants contend that but for the negligence of appellees in providing alcoholic beverages to an "obviously intoxicated" Bergeron, Bergeron would not have subsequently killed Alan. They assert that reasonable and prudent booth operators should foresee that an intoxicated person could be dangerous.

As summary judgment proof on the foreseeability issue, appellees Bottomless Pit, et al., furnished copies of the depositions of: (1) Barry Bergeron, and (2) Misty Robertson. Bergeron's deposition established that he had 8 to 10 beers at the Bottomless Pit between 9:30 p.m. and 11:00 p.m., but that he did not exhibit any signs of intoxication (did not stagger or slur his words). His deposition also indicated that Alan's truck rear-ended the Nissan in which Bergeron was a passenger. The accident occurred on the Astrodome parking lot near the Kirby exit shortly after midnight. After the accident, Bergeron admitted he called Alan a "f——g cowboy." Bergeron stated that Alan threw the first punch, and Bergeron was scared because Alan was much bigger than Bergeron. Bergeron stated he pulled his pocket knife and stabbed Alan in the leg to keep him off, but when Alan came at him again, Bergeron "pointed" his knife at him which resulted in the knife entering Alan's chest and piercing his heart.

Misty Robertson confirmed the accident facts, but could not tell if Bergeron was drunk. Her deposition was silent with respect to any violent or aggressive conduct by Bergeron at the Bottomless Pit booth which would have put appellees on notice that he might commit a crime.

In their response, appellants attached Bergeron's and Robertson's depositions, and the affidavits of Larry A. Rumley, Karen Owens, Shannon R. Gardner, and Dr. Wayne R. Snodgrass. Rumley stated he was in the Nissan with Bergeron, Owens, and Gardner, and made no statement as to whether Bergeron was or was not intoxicated. Likewise neither Gardner nor Owens had anything to say about whether or not Bergeron was intoxicated. All three indicated that Alan and Bergeron had a fight near the Kirby exit which resulted in Alan's death, but none of these witnesses had anything to say about Bergeron's conduct at the Bottomless Pit booth.

■ Dr. Wayne Snodgrass stated he was a licensed physician and was board certified in Medical Toxicology and Clinical Pharmacology. He stated his opinions were based on his study of Bergeron's and Robertson's depositions, appellees' answers to appellants' interrogatories, the statement of facts in Bergeron's murder trial, and the affidavits of Rumley, Owens, and Gardner. Dr. Snodgrass opined that Bergeron was "obviously intoxicated" at the time he was being served alcoholic beverages at Bottomless Pit. Dr. Snodgrass further opined that alcohol consumption often leads to violence. Other than stating Bergeron was "obviously intoxicated," and intoxication often leads to violence, Dr. Snodgrass' affidavit does not address any conduct of Bergeron at the Bottomless Pit that would give the Bottomless Pit reason to suspect, by Bergeron's demeanor or behavior, that Bergeron would commit a crime. Without evidence that Bottomless Pit knew or had reason to suspect that Bergeron, by his demeanor or behavior, would commit a crime, appellees properly established they could not have proximately caused Alan's death. Dr. Snodgrass' conclusion that Bergeron was "obviously intoxicated" and intoxication often leads to violence is insufficient to raise a fact issue as to foreseeability by appellees that Bergeron would commit a crime. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex.1996).

In their response to Bottomless Pit's motion for summary judgment, appellants

quoted the entire affidavit of Maurice Dennis, a professor at Texas A & M in alcohol and drug education. The actual affidavit of Maurice Dennis was not made a part of the record, and appellants cite as a reference only the pages of their responses that quote the missing affidavit in its entirety. Appellants give no explanation in their brief or their reply brief as to why the original affidavit of Maurice Dennis was not included in their record on this appeal. We cannot ascertain from the record whether the original affidavit was ever attached to appellants' motions for summary judgment or if it was omitted in the preparation of the clerk's record. Because we have a copy of Dennis' affidavit set out in appellants' responses, and the affidavit is not material to our disposition, we feel judicial economy will be served by rendering our judgment in this case on the merits rather than demand supplementation under rule 34.5(c)(1), Texas Rules of Appellate Procedure. *See Silk v. Terrill,* 898 S.W.2d 764, 766 (Tex.1995).

Dr. Dennis' entire affidavit was set out in appellants' response and indicates that Bergeron was "obviously intoxicated." Dr. Dennis then states:

> The intoxication of Barry Bergeron was a proximate cause of the injuries to and death of Alan Boggs. I understand proximate cause to mean a cause, which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred, and the act or omission complained of is such that a provider of alcoholic beverages would have foreseen that the event, or some similar event, might understandably result therefrom.

Dr. Dennis' affidavit does not address any conduct of Bergeron at the Bottomless Pit that would give the Bottomless Pit reason to suspect, by Bergeron's demeanor or behavior, that Bergeron would commit a crime. We find Dr. Dennis' statement concerning proximate cause to be conclusory and insufficient to raise a fact issue as to foreseeability by appellees that Berger-

on would commit a crime. *See Ryland Group, Inc.,* 924 S.W.2d at 122.

After the trial court granted summary judgment for Bottomless Pit, et al., appellees Bayou Teche and Corral Club filed their motion for summary judgment on the same grounds as Bottomless Pit, et al. In addition to the Bergeron and Robertson depositions, Bayou Teche and Corral Club furnished the depositions of Shannon Gardner, Thomas McBride, Larry Rumley, and Karen Owens. These witnesses stated that Bergeron did not appear "obviously intoxicated" while they observed him at the Bottomless Pit booth, and that he was not aggressive, obnoxious or looking for a fight while he was there. The witnesses all stated that Bergeron was in a good mood, and he was having a good time. The bartender, Leroy Jackson, testified that he did not serve anyone who appeared to have too much to drink or get out of line. Appellants also submitted the same conclusory affidavits of Drs. Snodgrass and Dennis discussed above in this opinion.

## Proximate Cause

Appellees sought to prevail on their motions for summary judgment by negating the foreseeability element of proximate cause through proof of third-party criminal conduct. Appellants contend the violent conduct of Bergeron was a foreseeable consequence of their providing him with alcohol when he was "obviously intoxicated."

Proximate cause has two elements, cause in fact and foreseeability. *See Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992)(op. on reh'g). Foreseeability means the actor, as a person of ordinary intelligence, should have anticipated the dangers his negligent act created for others. *Id.* As a general rule, criminal conduct of a third party is a superseding cause that extinguishes the liability of the previous actor. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex. 1987). However, when the third party's

criminal conduct is a foreseeable result of the prior negligence, the criminal act does not excuse the previous tortfeasor's liability. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 550 (Tex.1985). In *Nixon,* the supreme court relied on section 448 of the Restatement (Second) of Torts to articulate this proposition. *Id.* Section 448 provides:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

RESTATEMENT (SECOND) OF TORTS § 448 (1965).

### Discussion

 In the summary judgment context, a defendant who seeks to negate foreseeability on summary judgment must prove more than that the intervening third-party criminal conduct occurred. *See Phan Son Van v. Pena,* 990 S.W.2d 751, 754 (Tex.1999). The defendant has the burden to prove that the conduct was not foreseeable. *Id.* When a defendant presents evidence that the plaintiff's injuries resulted from intervening criminal conduct that rises to the level of a superseding cause based on considerations like those in Section 442 of the Restatement (Second) of Torts, the defendant has negated the ordinary foreseeability element of proximate cause. *Id.* The burden then shifts to the plaintiff to raise a fact issue by presenting controverting evidence that the criminal conduct was foreseeable. *Id.*

Section 442 of the Restatement (Second) of Torts provides that factors to be considered in determining whether an intervening force rises to the level of a superseding cause are:

> (a) the fact that the intervening force brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
>
> (b) the fact that the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;
>
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;
>
> (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;
>
> (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;
>
> (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

RESTATEMENT (SECOND) OF TORTS § 442 (1965). *See Humble Oil & Ref. Co. v. Whitten,* 427 S.W.2d 313, 315 (Tex.1968) (citing § 442); *see also Baley v. W/W Interests, Inc.,* 754 S.W.2d 313, 319 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (citing Section 442 criteria in determining whether intervening criminal acts were a superseding cause).

 Under the first factor, Bergeron's intervening act of murder was not the kind of harm that would have otherwise resulted from Bottomless Pit's negligent sale of alcoholic beverages to him. *See Phan Son Van,* 990 S.W.2d at 755(the harm inflicted by gang members in raping and murdering two girls was different in kind from that generally contemplated by the duty not to furnish alcoholic beverages to minors). "Driver error is a commonly understood

and foreseeable consequence of serving intoxicants to an already obviously intoxicated person." *Id.* (citing *Christen·v. Lee,* 113 Wash.2d 479, 780 P.2d 1307, 1315 (1989)). "While driver error is not an intentional act, a criminal assault is an intentional act." *Id.* In *Skipper v. United States,* 1 F.3d 349, 354 (5th Cir.1993), the court held that an intoxicated patron's murder of his former girlfriend in a non-commissioned military officers' club was an unforeseeable, superseding cause that extinguished the club's liability. Citing section 442 of the Restatement (Second) of Torts, the Fifth Circuit concluded that, even assuming alcohol consumption was a cause-in-fact of the death, the premeditated murder did not constitute an injury of the general character that might reasonably have been anticipated by the assailant's intoxication. *Id. See also Phan Son Van,* 990 S.W.2d at 755 (citing *Skipper*). The intentional murder by Bergeron which was some distance in time and location from the sale of alcohol "is not the type of harm that would ordinarily result from such a sale." *Id.* Thus, under the first factor of section 442, Bergeron's intervening act of murder would not have been foreseeable.

Under the second and third factors of section 442, Bergeron's act of murdering Alan during their fight would be an "extraordinary" rather than "normal" consequence of Bottomless Pit's sale of alcohol to Bergeron. *See Phan Son Van,* 990 S.W.2d at 755 (citing other cases where third party's violent criminal acts were an unforeseeable consequence of a bar's alleged negligence in serving the intoxicated assailants). The last three section 442 factors focus on the wrongful conduct and degree of culpability by the third person. As was the case in *Phan Son Van,* Bergeron's actions in this case were clearly wrongful, and he was found guilty of murder.

## Conclusion

■ Whether criminal activity is foreseeable in a particular instance requires "more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury." *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995) Appellants provided no summary judgment evidence of any fact that should have alerted any Bottomless Pit employee that Bergeron would get in a fight with Alan Boggs and murder him. Thus, there was no controverting evidence that appellees at the time Bergeron was in their booth could foresee that Bergeron would commit such a crime. The trial court correctly granted summary judgment. *See Walker v. Harris,* 924 S.W.2d 375, 377–378 (Tex.1996)(affirming summary judgment for the defendant when the plaintiff failed to bring forth any evidence raising a fact issue on the foreseeability of criminal conduct). Appellants' point of error one is overruled.

Because this issue is dispositive, we need not address the other two grounds of appellees' motions for summary judgment. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d at 627

In their second point, appellants first contend the trial court erred because it placed the burden of proof on them in granting summary judgment for appellees. Secondly, appellants assert that appellees did not plead their affirmative defense of intervening or superseding cause, and the "usual burden was apparently misapplied" by the trial court. As discussed above, appellees raised their affirmative defense in their summary judgment motion and proved as a matter of law that they could not foresee the criminal conduct of Bergeron. Thereafter, the burden shifted to appellants to raise a fact issue, and we found they produced no evidence to show any conduct by Bergeron at Bottomless Pit that would give them reason to suspect that Bergeron would commit such a crime. The burden of proof was properly placed on appellants by appellees proof of their affirmative defense as a matter of law.

Appellants' first sub-point to point of error two asserting improper placement of the burden of proof is overruled.

 As to the lack of pleading sub-point, appellants did not object to the lack of formal pleading in their responses or otherwise. An unpleaded affirmative defense may serve as the basis for summary judgment when it is raised in the summary judgment motion, and the opposing party does not object to the lack of a rule 94 pleading in either its written response or before the rendition of judgment. *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991). Appellants did not preserve error on this point by objecting to the lack of pleading in either their written responses or before the rendition of judgment. Appellants' second sub-point to point of error two is overruled.

The judgment of the trial court is affirmed.