# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00817-CV

**James McArdle and Chung McArdle, Appellants**

**v.**

**Eric Stahl, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 03-064-C368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In October 2001, Terence McArdle attended a party thrown by appellee Eric Stahl while Stahl's mother, Susan Bassett, was out of town. During the party, Terence got into a fight with Brandon Threet, during which Threet kicked Terence in the head, killing him. Terence's parents, appellants James McArdle and Chung McArdle, sued Stahl, Bassett, and Threet under the Wrongful Death Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 71.001-.012 (West 1997 & Supp. 2005). The trial court granted partial summary judgment in favor of Stahl and Bassett, and several months later, after a bench trial, signed a final judgment against Threet awarding the McArdles $500,000 each for wrongful death damages and $100,000 jointly for survival action damages. The McArdles appeal from the trial court's summary judgment in favor of Stahl; they do not appeal from the judgment in favor of Bassett. We affirm the trial court's order granting summary judgment for Stahl.

## Procedural and Factual Background

In October 2001, Bassett went out of town, leaving Stahl, then nineteen years old and a freshman in college, alone at her house. Stahl hosted a party attended by a number of friends from high school, including Threet, a friend of Stahl's since about 1991, and Terence, with whom Stahl had been friendly since they met in high school. During the party, Terence attempted a back-flip inside the house, jostling a chest and knocking over some pictures. Threet told Terence to stop "acting like an idiot," and Terence and Threet briefly exchanged words before Stahl stepped in to calm the situation. Between thirty and sixty minutes later, Threet encountered Terence in the backyard. Threet proposed that he and Terence "trade licks," meaning Terence would punch Threet once, and Threet would in turn punch Terence once. Terence agreed and punched Threet once in the chest. Rather than punching Terence back in the same manner, Threet punched Terence in the face, knocking him to the ground. He then kicked Terence in the head, causing fatal head injuries. Threet was convicted of manslaughter and sentenced to twenty years' imprisonment. The McArdles then filed this wrongful death suit, asserting that Stahl had breached the duty he owed to Terence as a licensee and was liable for negligently failing to control the party and the premises.

Stahl moved for summary judgment, asserting that the McArdles could not establish any duty on Stahl's part that would make him liable for Threet's conduct and that the McArdles could not establish the elements of a premises liability case.[1] Finally, Stahl argued that under Texas

---

[1] Stahl did not specify whether he was seeking a no-evidence or a "traditional" summary judgment. *See* Tex. R. Civ. P. 166a(c), (i). He attached evidence to his motion, as required by rule 166a(c), but also argued that there was no evidence of certain elements of the McArdles' claims. We will treat Stahl's motion as seeking a traditional summary judgment. *See Adams v. Reynolds Tile & Flooring, Inc.*, 120 S.W.3d 417, 419-20 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

law, the general rule is that one person has no duty to control the criminal conduct of another. Stahl asserted that because Terence was a licensee, Stahl owed him a duty to warn of dangers about which Stahl had actual knowledge; Threet's presence at the party did not amount to a premises defect or dangerous condition on the property; and Threet's violent acts were not foreseeable and Stahl had no actual awareness that Threet posed a risk of serious harm to Terence. Stahl maintained that any connection between his conduct and Terence's death was too attenuated to support liability.

The McArdles responded, stating that their claims were not based on any theory involving the provision of alcohol to the partygoers.[2] They argued that because Stahl was aware of Threet's violent tendencies, Stahl should have warned Terence about Threet and should have asked Threet to leave. The McArdles also contended that because Stahl was aware of Threet's violent temper, Threet's attack on Terence was foreseeable to Stahl.

As summary judgment evidence, the parties produced Stahl's affidavit and excerpts of testimony by the parties and witnesses to the fight taken in depositions and in Threet's criminal trial. Stahl testified that after Terence knocked over the picture, Threet told Terence to stop, using some obscenities, and he and Terence "exchanged words," yelling at each other briefly. Stahl

---

[2] Stahl also argued that he was not liable to the McArdles under a social host argument. The McArdles responded that they were not seeking to hold Stahl liable as a social host or under any other cause of action involving the provision of alcohol to the partygoers, but instead under a breach of the duty owed to a licensee and negligent failure to exercise control. On appeal, the McArdles again argue that they did not sue based on social host theories. We will examine the motions, responses, and evidence only in light of the McArdles' claims of a breach of duty owed to Terence as a licensee and negligent failure to exercise control.

3

stepped in and told Threet that it "was no big deal," and Threet left the room; Stahl did not see Terence or Threet again until after the fight and had no indication that Threet intended to harm Terence in any way. Stahl testified that he acted because Threet seemed agitated and angry and "about to start some trouble." Although Stahl "never expected anything of the magnitude to happen," he thought "trouble could ensue from the altercation that had just taken place." He said Threet "was just trying to keep people from breaking things."

In his affidavit, Stahl averred that he was not aware that Threet had a history of emotional instability or violent behavior. Stahl said that the only violent incident of which he was aware occurred in early 2001, when he, Threet, and a mutual friend named Jarrod Gardner were "playing around," and Stahl hit Threet. Threet, believing Gardner had hit him, punched Gardner in the face, blackening his eye. After Threet learned of his mistake, he called Gardner to apologize. Stahl agreed that Threet's response was "out of the ordinary." Stahl also knew Threet once punched a fence after fighting with a girlfriend, a reaction Stahl agreed seemed "excessively violent."

The witnesses to the fight said that there was no indication that Threet would do anything more than hit Terence in the chest in response to Terence's punch. They were surprised and shocked by Threet's actions. One witness said that he thought that others were going to pull Threet away and that everything would be fine; instead, Threet pulled loose, took several steps, and kicked Terence in the head. Threet's girlfriend stated that when she heard Threet had gotten into a fight with Terence, even before she knew how serious Terence's injuries were, she was "very surprised," "shocked," and "furious" because Threet "knows that I don't like fighting. And he has never been in any fights before."

4

At Threet's criminal trial, he testified that about twenty minutes after he exchanged words with Terence after the back-flip, he saw Terence in the backyard and challenged him to "trade licks," meaning they would hit each other in the chest. Threet testified that he was not angry at Terence and did not have any thought of hurting Terence. Threet stated that when Terence hit him in the chest, "it took the wind out, me not expecting to be that aggressively hit." Threet then hit Terence in the face and, after Terence fell, kicked him in the head. Threet said he had no reason to act as he did and said he was out of control and had no idea what he was doing.

Stahl and his mother both testified that Stahl had thrown another party without permission in August 2001, several months before Terence's death. A fight occurred at that party when some boys who went to another high school were turned away after they tried to enter Stahl's party. As the boys were leaving, one of Stahl's friends approached, and the group punched him. The police were called and the party was broken up.

The McArdles also produced as evidence several online publications from police offices in New York and Nebraska and from websites giving advice on parenting teenagers, saying that "[u]nsupervised house parties have been the scene of many tragic events." The websites warn of alcohol and drug abuse, drunk driving, date rape, vandalism, and fights, and "incidences of violence," and ask that parents not leave their teenagers unattended and call the parents of teenagers throwing parties. Finally, the McArdles produced a report from the Los Angeles Times that in late 2001, a teenage girl was stabbed and killed by another girl at a party attended by about 100 teenagers. The murdered girl's parents alleged that during the fight, other teenagers watched and cheered, stopped anyone from breaking up the fight, and even held the victim down while she was attacked.

5

## Discussion

In their second issue, the McArdles argue that the evidence shows that there is a fact question as to whether Stahl breached the duties he owed to Terence as a licensee and whether Threet's attack on Terence was foreseeable. Because we hold that Stahl showed as a matter of law that Threet's violent attack was not foreseeable, the trial court had proper grounds to grant summary judgment, and we need not reach the McArdles' other issues.

Generally, a person has no duty to protect another from criminal acts committed by a third-party. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996); *see Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (general rule does not apply if special relationship exists between actor and third-party, such as employer/employee, parent/child, or independent contractor/contractee; such relationship gives rise to duty to control third-party's conduct). Likewise, someone who owns or controls property has no duty to protect others from criminal acts by a third-party not under the owner's control. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998); *Walker*, 924 S.W.2d at 377; *Donnell v. Spring Sports, Inc.*, 920 S.W.2d 378, 383 (Tex. App.—Houston [1st Dist.] 1996, writ denied).

No duty can arise in the "absence of a foreseeable risk of harm." *Walker*, 924 S.W.2d at 377. Thus, to hold a defendant liable for the criminal acts of a third-party, whether under a general negligence theory or a premises liability theory, the plaintiff must show that the criminal activity and subsequent harm were foreseeable. *Cain*, 972 S.W.2d at 756; *Phillips*, 801 S.W.2d at 526 ("before liability will be imposed, there must be sufficient evidence indicating that the defendant knew or should have known that harm would eventually befall a victim"). Foreseeability means that the

defendant, "as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985). Whether a defendant had a duty to protect against the third-party's criminal acts is a question of law, and we determine whether the criminal conduct was foreseeable not in hindsight, but in light of what the defendant knew or should have known at the time. *Cain*, 972 S.W.2d at 756-57. The general danger, not the exact injury or conduct, must be foreseeable. *Walker*, 924 S.W.2d at 377.

Therefore, a defendant may prove himself entitled to summary judgment if he can prove both that an intervening criminal act occurred and that the criminal conduct was not foreseeable. *Phan Son Van v. Pena*, 990 S.W.2d 751, 754 (Tex. 1999). If the defendant proves that the criminal conduct amounts to a superseding cause, the defendant negates foreseeability.[3] *See id*. In determining whether an intervening force rises to the level of a superseding cause, courts consider whether (1) the criminal act caused harm different in kind from that which would otherwise have resulted from the defendant's negligence; (2) the act or its consequences were extraordinary, rather

---

[3] "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Restatement (Second) of Torts § 440 (1965) (quoted in *Crown Derrick Erectors, Inc. v. Dew*, 117 S.W.3d 526, 536 (Tex. App.—Beaumont 2003, pet. filed)). An act is a superseding cause if it so entirely supersedes the defendant's negligence that it alone caused the injury without contribution by the defendant's negligence. *Missouri, Kan. & Tex. Ry. v. Norris*, 184 S.W. 261, 266 (Tex. Civ. App.—Dallas 1916), *rev'd on other grounds*, 222 S.W. 1097 (Tex. Comm'n App. 1920, judgm't adopted). A third person's criminal act is a superseding cause even if "the [defendant's] negligent conduct created a situation which afforded" the opportunity for the criminal act, "unless the [defendant] at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created." Restatement (Second) of Torts § 448 (1965). However, "[i]f the likelihood that a third person may act in a particular manner is the hazard . . . which makes the [defendant] negligent," the occurrence of that act does not relieve the defendant from liability. *Id*. § 449 (1965).

than normal, in light of the circumstances at the time; (3) the criminal conduct operated independent of the situation created by the defendant's negligence or was a normal result of such a situation. *Id*. at 754 (quoting Restatement (Second) of Torts § 442 (1965)). A defendant in control of property may know or have reason to know of a likelihood that a third-party's conduct is likely to endanger a visitor, and if his past experience is such that he should reasonably anticipate careless or criminal conduct by the third-party, he may owe a duty to take precautions against it.[4] Restatement (Second) of Torts § 344 cmt. f. (1965). Once the defendant proves a superseding cause, the burden then shifts to the plaintiff to present evidence raising a fact issue as to whether the crime was foreseeable. *Pena*, 990 S.W.2d at 754 (citing Restatement (Second) of Torts § 442 (1965)).

The McArdles claimed that Stahl knew that Threet had "a history of emotional instability and violent behavior" and therefore had a duty to exercise reasonable and ordinary care to control or supervise Threet, to warn Terence and other party-goers, and to ask Threet to leave "when it became apparent that [Threet] was attempting to encourage violence involving other party guests." The McArdles asserted that Stahl breached his duty to exercise ordinary care in the maintenance, management, and use of the property by failing to gain control of participants, eject Threet from the party, end the party, or otherwise make the property safe. They further claimed that

---

[4] Similarly, when a plaintiff sues the owner of property where a crime occurred, we should consider whether criminal conduct occurred earlier on or near the property, how recently and how often it occurred, how similar it was to the complained-of crime, and whether the earlier occurrences were publicized so as to show that the owner knew or should have known about them. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 757 (Tex. 1998). The property owner has "the power of control or expulsion," and thus is in a position to protect against a third-party's criminal acts if the owner should reasonably anticipate the conduct due to location, past experience, or similar considerations. *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993) (quoting *Morris v. Barnette*, 553 S.W.2d 648, 649-50 (Tex. Civ. App.—Texarkana 1977, writ ref'd n.r.e.)).

Stahl was negligent in hosting the party, knowing that it "would result in the creation of a dangerous condition." In his motion for summary judgment, Stahl asserted that the McArdles could not establish that he had a duty as either a premises owner or social host. Stahl argued that there was no evidence that he had an actual awareness that Threet was a "dangerous condition," and concludes that he therefore had no duty due to a lack of foreseeability.

At the time of the attack, Stahl had known Threet for more than ten years and was aware of two earlier displays of violence by Threet. During that time, Threet once punched a fence after a disagreement with his girlfriend. Additionally, several months before his attack on Terence, Threet punched Gardner in the face when he mistakenly believed Gardner had hit him first; Stahl believed that Threet later apologized to Gardner. Neither of those incidents make Threet's deadly attack on Terence conduct that Stahl should have foreseen and guarded against. On the night of the party, Stahl confronted Threet, attempting to stop the dispute from escalating into trouble. Threet himself said that he was not angry at and did not intend to hurt Terence, much less kill him, when he proposed that they "trade licks" in the backyard. Threet said he was out of control and reacted without thinking. Other witnesses to the fight said that there was no indication that Threet was out of control or angry before Terence agreed to trade punches. The evidence presented simply does not raise a fact issue as to whether Stahl should have been aware of the danger posed by Threet based on Threet's behavior the night of the party. *See Spears v. Coffee*, 153 S.W.3d 103, 107-08 (Tex. App.—San Antonio 2004, no pet.) (although defendant knew that "roughhousing" and "'serious' horseplay" had occurred before, plaintiff warned defendant of third-party's "tendency toward angry outbursts and propensity for violence" without giving details of such behavior, and third-party

9

appeared "aggravated" on day of assault, plaintiffs did not raise fact issue as to whether defendants should have foreseen assault).  The fact that Stahl had hosted an earlier party at which one boy punched another does not give rise to an inference that Threet's vicious and deadly attack could have been foreseen by Stahl.[5]  *See Donnell*, 920 S.W.2d at 385.

The internet information warning parents about unsupervised parties does not raise a fact issue as to whether Stahl knew or should have known of the potential for a deadly attack.  All but one of the websites produced by the McArdles discuss how unsupervised parties of teenagers can lead to trouble such as underage drinking, date rape, drunk driving, or fights.  Even if we were to assume both that Stahl knew of the websites and that they can be viewed as putting him on notice that such predictable activities could result, scuffles between teenagers or drunk-driving accidents are fundamentally different in character from Threet's violent attack.  *See Boggs v. Bottomless Pit Cooking Team*, 25 S.W.3d 818, 825 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("Bergeron's act of murdering Alan during their fight would be an 'extraordinary' rather than 'normal' consequence of Bottomless Pit's sale of alcohol to Bergeron"); *Donnell*, 920 S.W.2d at 385 ("While small scuffles may have been foreseeable, a fight of this kind was not.").  Nor does the report about the stabbing in California bear upon whether Stahl could have predicted Threet's behavior.  *See*

---

[5]  The McArdles do not argue that Stahl had any "special" relationship to Threet that would give rise to a duty to control Threet's conduct.  *See Van Horn v. Chambers*, 970 S.W.2d 542, 546-47 (Tex. 1998) (quoting Restatement (Second) of Torts §§ 315, 319 (1965)); *see also Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (employer/employee, parent/child, or certain independent contractor/contractee relationships may give rise to duty to control third-party).

*Boggs*, 25 S.W.3d at 824-25; *Donnell*, 920 S.W.2d at 385. "Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury." *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).

Threet's attack on Terence clearly qualifies as a superseding event under section 442 of the Restatement. *See* Restatement (Second) of Torts § 442; *Pena*, 990 S.W.2d at 754-55. Even if we assume, purely for the sake of argument, that Stahl was aware of Threet's temper, there is no evidence that he had reason to anticipate any escalation to a deadly level. Instead, Threet viciously attacked and killed Terence, which is a very different injury than that which ordinarily might have resulted from any negligence on Stahl's part. *See Pena*, 990 S.W.2d at 755. Witnesses to the fight, as well as Stahl and Threet's girlfriend, were all shocked and surprised by Threet's sudden and violent behavior, which was extraordinary and not a normal reaction in view of the circumstances. *See id*. Threet alone was responsible for his wrongful behavior, and he was found criminally liable and sentenced to twenty years in prison. *See id*. at 756.

We hold that Stahl proved as a matter of law that, based on what he knew at the time, Threet's criminal assault on Terence was not foreseeable. *See Cain*, 972 S.W.2d at 756-57. To assert that Terence's death was the foreseeable result of Stahl's hosting of the party and failure to ask Threet to leave requires "theorizing an extraordinary sequence of events whereby" Stahl's conduct caused Terence's death. *See Doe*, 907 S.W.2d at 478. Because Threet's attack was not foreseeable, Stahl had no duty to warn Terence, attempt to control Threet or ask Threet to leave, or take other steps to guard against Threet's criminal behavior. Terence's death is a tragedy, but it is

11

not an event that was foreseeable and for which Stahl may be held liable.  The trial court did not err in granting summary judgment in favor of Stahl.  We affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   June 15, 2006