

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-24-00218-CV

---

ANTHONY LOPEZ, Appellant

V.

CBE EXTREME NIGHTLIFE FW, LLC D/B/A OLD SCHOOL TEXAS,
Appellee

---

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-337949-22

---

Before Kerr and Birdwell, JJ.; and Gonzalez, J.[1]
Memorandum Opinion by Justice Birdwell
Justice Kerr concurs without opinion.

---

[1]The Honorable Ruben Gonzalez, Judge of the 432nd District Court of Tarrant County, sitting by assignment of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code. *See* Tex. Gov't Code Ann. § 74.003(h).

**MEMORANDUM OPINION**

After being forcibly ejected from a bar due to his extreme intoxication, Appellant Anthony Lopez sustained an ocular injury in the bar's parking lot that left him blind in one eye. Lopez sued the bar's owner, Appellee CBE Extreme Nightlife FW, LLC d/b/a Old School Texas (CBE), asserting a claim under the Texas Dram Shop Act, an assault claim based on the theory of respondeat superior, and common-law-negligence and gross-negligence claims. CBE filed both no-evidence and traditional summary-judgment motions in which it argued, among other things, that Lopez's negligence and gross-negligence claims were preempted by the Texas Dram Shop Act and that because Lopez had no memory of how he was injured, there was no genuine issue of material fact as to the elements of his dram-shop and assault claims. After holding a hearing and receiving supplemental briefing on the sufficiency of the evidence to support the dram-shop claim's causation element, the trial court granted CBE's summary-judgment motions and dismissed all of Lopez's claims with prejudice.

Lopez timely appealed from this summary judgment. Because we conclude that the Texas Dram Shop Act preempts Lopez's negligence and gross-negligence claims, we affirm the trial court's summary judgment as to those claims. Further, because Lopez failed to challenge all of the grounds supporting the trial court's dismissal of his respondeat superior assault claim, we affirm the trial court's summary judgment as to that claim. But because Lopez presented sufficient evidence to support a reasonable

inference that his extreme intoxication proximately caused his eye injury, we reverse the trial court's summary judgment as to his dram-shop claim and remand the case for further proceedings.

## I. BACKGROUND

CBE owns and operates the Old School Texas bar and grill in Fort Worth. It engages off-duty police officers to serve as security personnel.

On October 24, 2020, Lopez drove two of his friends to Old School Texas around 10:00 p.m. When he arrived at the bar, Lopez did not appear intoxicated. But after consuming "at least [ten] beers" and approximately "six or seven shots" over the next several hours, he began "showing signs of being very drunk." At one point, the waiter commented that Lopez did "not look[] so good," but he never turned Lopez down when he ordered a drink. By the end of the night, Lopez was so drunk that he struggled "to even say the name of the beer [that] he was ordering" and "could barely . . . stand up." Due to Lopez's extreme intoxication, "[m]ost of [his] memories toward the end of the night are blurs."

Because Lopez was so drunk, one of the friends who rode with him to the bar took Lopez's keys and stopped drinking himself so that he could drive the group home. Because he had taken Lopez's keys and could ensure that he would get home safely, the friend believed that it "was okay" for Lopez to continue drinking.

3

"Toward the end of the evening, probably after 1:00 a.m.," Lopez's designated-driver[2] friend went to the restroom, leaving Lopez at the table. While his friend was in the restroom, off-duty police officers acting as security guards forcibly removed Lopez from the bar. According to Lopez, the security guards "shov[ed him] aggressively" because he was unable to walk properly. He claims that he tried to tell them that his friend had his keys and was in the restroom, "but they would not let [him] wait" and "kept shoving [him] from behind."

When Lopez's designated driver returned from the restroom, he and the other member of their party immediately gathered their things, went outside, and began looking for Lopez. They found Lopez on the ground in the parking lot; his left eye was bleeding, and he had some other cuts. Lopez was too drunk to describe what had happened or the nature of his injuries, so his friends just took him home and put him in bed.

When Lopez woke up the next morning, he could not see out of his left eye. He looked in the mirror and discovered that his eye was completely filled with blood. He went to the emergency room and ultimately underwent three surgeries, but these procedures were unsuccessful in restoring the vision in his left eye.

---

[2]*See Duran v. City of Douglas*, 904 F.2d 1372, 1377 n.3 (9th Cir. 1990) (observing a "designated driver" is "a widely[ ]accepted safety technique to have one person in a group remain sober . . . precisely so that others can drink without having to worry about driving home safely").

4

Because he was heavily intoxicated at the time, Lopez does not remember how he was injured. Initially, he had assumed that he had "injured [his] eye by falling down while being black-out drunk." But after his eye doctor told him that his injury was consistent with having been beaten up, he called the police and told them about the rough treatment that he had received from Old School Texas's security guards. Because there were no eyewitnesses and no video evidence and because Lopez himself had "admitted that he was too intoxicated to remember" what had happened, no criminal charges were ever filed, and the investigation was closed.

In October 2022, Lopez filed suit against CBE. Alleging that he had been "brutally assaulted and battered" by CBE's "employee," Lopez asserted a claim under the Texas Dram Shop Act, an assault claim based on the doctrine of respondeat superior, and claims for negligence and gross negligence. As noted, CBE moved for summary judgment on both no-evidence and traditional grounds, and the trial court granted the motions and dismissed all of Lopez's claims with prejudice. This appeal followed.

## II. DISCUSSION

On appeal, Lopez generally argues that the trial court's summary judgment should be reversed as to each of his causes of action. We will address the summary judgment's propriety as to each of these individual claims in turn below.

5

## A. Standard of Review: Summary Judgment

We review a summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When, as here, the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment was sought are meritorious. *Id.* Evidence is considered in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id.*; *see Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

When a party files both no-evidence and traditional motions for summary judgment, *see* Tex. R. Civ. P. 166a(c) & (i),[3] we generally consider the no-evidence motion first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the no-evidence motion. *Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023). If the nonmovant fails to meet its burden under the no-evidence

---

[3]The Texas Supreme Court amended Rule 166a, effective March 1, 2026. *See* Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure, Misc. Docket No. 26-9012 (Tex. Feb. 27, 2026). But the "amendments apply only to a motion for summary judgment filed on or after March 1, 2026," *id.*, so they are inapplicable here. All citations to summary-judgment standards reference interpretations of the prior version of Rule 166a, which continues to govern motions for summary judgment filed before March 1, 2026.

motion, there is no need to address the challenge to the traditional motion as it necessarily fails. *Merriman*, 407 S.W.3d at 248.

To defeat a no-evidence motion, the nonmovant must produce evidence raising a genuine issue of material fact as to the challenged elements. *See Ridgway*, 135 S.W.3d at 600. "A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). The evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014) (quoting *Ridgway*, 135 S.W.3d at 601). A no-evidence challenge will be sustained when

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc.*, 953 S.W.2d at 711).

A defendant is entitled to traditional summary judgment if it conclusively negates at least one essential element of the plaintiff's cause of action, showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Hillis v. McCall*, 602 S.W.3d 436, 439–40 (Tex. 2020); *Harkins v. Wal-Mart Stores*

7

*Tex., LLC*, No. 02-21-00201-CV, 2022 WL 3453548, at *4 (Tex. App.—Fort Worth Aug. 18, 2022, pet. denied) (mem. op. on reh'g).

## B. Negligence and Gross Negligence

Lopez contends that the trial court erred by granting CBE summary judgment on his negligence and gross-negligence claims because they are not preempted by the Texas Dram Shop Act (the Act).[4] We disagree.

"The Legislature enacted the Dram Shop Act to 'deter providers of alcoholic beverages from serving alcoholic beverages to obviously intoxicated individuals who may potentially inflict serious injury on themselves and on innocent members of the general public.'" *F.F.P. Operating Partners v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007) (op. on reh'g) (quoting *Smith v. Sewell*, 858 S.W.2d 350, 356 (Tex. 1993)).[5] To achieve

---

[4]Lopez also argues that CBE failed to challenge his negligence and gross-negligence causes of action in its summary-judgment motions. But as Lopez acknowledges elsewhere in his briefing, CBE explicitly argued in its traditional summary-judgment motion that all of Lopez's common-law negligence causes of action were preempted by the Act. Accordingly, we reject Lopez's argument that CBE failed to challenge these claims.

[5]"Dram shop" is an old English term for "[a] place where alcoholic beverages are sold," such as "a bar or saloon." *Dram shop*, Black's Law Dictionary (12th ed. 2024); *see Lacy v. State*, 32 Tex. 227, 228 (1869) ("In common parlance, a 'dram' means something that has alcohol in it—something that can intoxicate."). "Historically, an individual who voluntarily became intoxicated was precluded from suing a tavern owner for his own injuries." *Smith*, 858 S.W.2d at 352. The common law considered a patron's voluntary intoxication to be the sole proximate cause of any harm and the harm itself unforeseeable by the provider. *Raoger Corp. v. Myers*, 711 S.W.3d 206, 210 (Tex. 2025) (citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 309 & 314 (Tex. 1987) (imposing common-law duty of care upon commercial providers of alcoholic beverages for injuries proximately caused by their patrons), *superseded by statute as*

8

this purpose, the Act imposes liability on providers of alcoholic beverages for the actions of their intoxicated patrons when, as discussed in more detail below, certain conditions are met.[6] *See* Tex. Alco. Bev. Code Ann. § 2.02(b). The Act further includes a preemption provision stating that "[t]he liability of providers . . . for the actions of their employees, customers, members, or guests who are or become intoxicated is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages." *Id.* § 2.03(a). Finally, the Act states that it "provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older." *Id.* § 2.03(c).

Considering these latter provisions, the Texas Supreme Court has consistently recognized that "the Dram Shop Act codifies the exclusive [cause of] action against an

---

*recognized by Duenez*, 237 S.W.3d at 683–85). *But see Tex. Midland R.R. Co. v. Geraldon*, 128 S.W. 611, 612 (Tex. 1910) (recognizing wrongful expulsion cause of action predicated upon delicate condition of pregnant passenger and inclement weather at time of her expulsion from depot and citing *Weymire v. Wolfe*, 3 N.W. 541, 542–43 (Iowa 1879) (rejecting voluntary intoxication as dispositive of contributory negligence and imposing common-law duty of care upon saloonkeeper for patron "expelled from the saloon at a late hour of the night, drunk and unconscious, [who] died by reason of exposure and cold")).

[6]The Act does not define "intoxicated" for purposes of either liability or preemption. Tex. Alco. Bev. Code Ann. §§ 1.04, 2.01. In *El Chico*, the supreme court defined "intoxication" as "a condition when, due to the consumption of alcoholic beverages, a person suffers impaired mental or physical faculties and a resulting diminution of the ability to think and act with ordinary care." 732 S.W.2d at 313. By comparison, the legislature has defined a person as "intoxicated" for purposes of the offense of public intoxication if he does not have "the normal use of mental or physical faculties by reason of the introduction of alcohol" or he has "a[ blood–]alcohol concentration of 0.08 or more." Tex. Penal Code Ann. § 49.01(2).

alcohol provider for injuries or damages resulting from the intoxication of a patron." *Duenez*, 237 S.W.3d at 691; *see Borneman v. Steak & Ale of Tex., Inc.*, 22 S.W.3d 411, 412 (Tex. 2000); *Southland Corp. v. Lewis*, 940 S.W.2d 83, 84 (Tex. 1997); *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993). Thus, to the extent that a plaintiff's common-law-negligence or gross-negligence claim against a provider arises out of the overservice of alcoholic beverages, it is preempted, and the cause of action created by the statute is the exclusive remedy. *See Duenez*, 237 S.W.3d at 691; *Lewis*, 940 S.W.2d at 84; *Last v. Quail Valley Country Club, L.P.*, No. 01-08-00759-CV, 2010 WL 1253782, at *5 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, pet. denied) (mem. op.) ("Texas law is unequivocal that the Dram Shop Act is the exclusive means of pursuing liability against a provider . . . .").

Critically, Lopez does not argue that his common-law claim for negligent hiring, training, and supervision of CBE's serving staff is not preempted.[7] Indeed, the Act's safe-harbor provisions make preemption of such claims crystal clear by substituting a comprehensive defense to dram-shop liability if a provider (1) requires its employees to attend a training program approved by the Texas Alcoholic Beverage Commission, (2) the employee alleged to have overserved an intoxicated patron actually attended such a program, and (3) the provider did not directly or indirectly

---

[7]"Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability." *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.).

10

encourage the employee to violate the law. Tex. Alco. Bev. Code Ann. §§ 2.02(b), 106.14(a); *see 20801, Inc. v. Parker*, 249 S.W.3d 392, 394 (Tex. 2008); *Bolanos v. Purple Goat, LLC*, 649 S.W.3d 753, 756–57, 762 (Tex. App.—El Paso 2022, no pet.) (holding that common-law negligence claims based on provider's hiring, retention, and supervision of serving staff were preempted because they "arose out of [provider's] overserving alcohol"); *Yarbrough v. McCormick*, No. 04-17-00283-CV, 2018 WL 3129459, at *8–9 (Tex. App.—San Antonio June 27, 2018, no pet.) (mem. op.) (holding that common-law negligence and gross-negligence claims arising from provision of alcohol were preempted).

Instead, Lopez argues that his common-law claims for negligent hiring, training, and supervision of CBE's security personnel and their negligence in forcibly ejecting him from the bar are not preempted because they are "unrelated to the provision of alcohol." According to Lopez, "the conduct of the bar's security personnel in throwing [him] out of the bar" and the bar's "negligence in . . . hiring, training, and supervisi[ng] . . . bouncers" is separate and distinct from "the conduct of [the] waiters who over[]served [him] in violation of the Dram Shop Act."

But Lopez has repeatedly asserted—both in the trial court and on appeal—that his eye injury was caused by his extreme intoxication as a patron of the bar. *See* Tex. Alco. Bev. Code Ann. § 2.03(a) (preempting common-law causes of action arising from the actions of an intoxicated customer or guest). Indeed, the first sentence of Lopez's petition's "Causes of Action" section—which contains the allegations

11

underpinning both his dram-shop and negligence/gross-negligence claims—alleges that CBE "provided, sold, and/or served [Lopez] alcoholic beverages when it was apparent [that he was] obviously intoxicated." Further, Lopez argued in the trial court that the mechanism of injury was his forcible ejection from the bar in a state of extreme and debilitating intoxication and that, even if the jury declined to find that an actionable assault occurred, his removal to the parking lot in a mentally and physically incompetent condition was the cause of his injury.[8] *See, e.g.*, *ONI, Inc. v. Swift*, 990

---

[8]A common-law cause of action for personal injury damages suffered by a business invitee, customer, or patron forcibly ejected, expelled or removed from a commercial premises involves a "hybrid body of law that lies at the intersection of premises liability and agency law." *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997) (citing *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993)). In *Texas & Pacific Railway Co. v. Weatherly*, the supreme court confirmed that

> the owner of [a commercial] premises has the right to eject trespassers therefrom and use such force as is reasonably necessary to do so, and if a trespasser resists ejection, the owner of the premises or his agents, have the right to use such force as appears reasonably necessary under the facts and circumstances in order to effect the ejection.

101 S.W.2d 217, 218–19 (Tex. [Comm'n Op.] 1937) (approving jury instruction for wrongful ejection from a railway depot, including definitions of "eject" as "the right to remove the said plaintiff from the defendant's premises" and "force" as "such force as may have been reasonably necessary under the facts and circumstances in evidence before you to remove the plaintiff from the defendant's premises"); *see Geraldon*, 128 S.W. at 611–13 (affirming judgment for personal injuries sustained by pregnant passenger when ejected from the depot's waiting room into downpour); *Tex. & New Orleans R.R. Co. v. Parsons*, 113 S.W. 914, 914–16 (Tex. 1908) (affirming judgment for personal injuries inflicted by special deputy hired by railroad to eject transients and trespassers from its railyards); *Hampton v. Sharp*, 447 S.W.2d 754, 758 (Tex. App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.) ("One who is in lawful possession of property has the right as against an intruder or trespasser to request him

12

S.W.2d 500, 501–04 (Tex. App.—Austin 1999, no pet.) (affirming judgment for personal injuries sustained by patron, including injury to and lacerations around his eye, when bouncer forcibly ejected him from bar and he was attacked by an unidentified assailant in the parking lot); *Ohlen v. Hagar*, 212 S.W.2d 253, 254–57 (Tex. App.—Fort Worth 1948, writ ref'd n.r.e.) (affirming judgment awarding damages to woman who suffered severe laceration to leg when forcibly ejected from downtown Fort Worth bar by owner due to alleged intoxication); *Bounty Ballroom v. Bain*, 211 S.W.2d 248, 250, 252–53 (Tex. App.—Amarillo 1948, writ ref'd n.r.e.) (affirming judgment for personal injuries sustained by patron when special police officer struck him with an unidentified object then ejected him "and commanded him to 'go home

to leave, and if he does not go, can use all reasonable means to compel him to leave using no more force than is reasonably necessary.").

The right to use reasonable force in ejecting trespassers is a longstanding principle of the common law. *See Watrous v. Steel*, 4 Vt. 629, 631–32 (1829) ("It is a well settled principle, that the occupant of any house, store, or other building, has a legal right to control it, and to admit whom he pleases to enter and remain there, and that he has also a right to expel any one from the room or building who abuses the privilege which has been thus given him; and if the occupant finds it necessary, in the exercise of his lawful rights, to lay hands on him to expel him, he can legally justify the assault."). If, however, the force employed to eject the trespasser is unnecessary, unreasonable or excessive and thereby causes injury, the owner or occupier of the premises may be held liable in damages for wrongful ejection. *See Rucker v. Barker*, 192 S.W. 528, 528–29 (Tex. 1917) (affirming judgment in favor of patron of a medicine show forcibly ejected from the venue over a seat dispute by a deputy constable employed by the proprietor to provide premises security and handed over for arrest by the police); *Weatherly*, 101 S.W.2d at 218–19 (affirming judgment for personal injuries sustained when special officer struck plaintiff when forcibly ejecting him from railroad premises); *Tex. & Pac. Ry. Co. v. Mother*, 24 S.W. 79, 80 (Tex. App.—Fort Worth 1893, writ ref'd) (affirming judgment awarding wrongful death damages for wrongful ejection of trespasser from freight train).

and sober up'"). Finally, in his appellate brief, Lopez argued that his eye injury was the end result of a "chain of causation that began with the over[]service of alcohol." Accordingly, the underlying premise of his negligence and gross-negligence causes of action is that his forcible ejection from the bar was due to CBE's overservice of alcohol, his resulting excessive level of intoxication, and his actions as a customer or guest under the influence thereof, and that "but for" the extreme intoxication he experienced due to overservice he would not have suffered the injury to his eye or the loss of its sight.[9]

---

[9]Neither Lopez nor CBE disputes that an off-duty peace officer hired by CBE to provide premises security initiated and completed Lopez's forcible ejection from the bar's interior to its parking lot or that Lopez was extremely intoxicated at the time of his ejection. CBE did not assert as a ground for summary judgment, however, that the officer was engaged in law enforcement activity for which it could not be held vicariously liable. *See Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 418–19 (Tex. App.—Dallas 2007, pet. denied) ("If the officer is performing a public duty, such as the enforcement of general laws, the officer's private employer incurs no vicarious responsibility for that officer's acts, even though the employer may have directed the activities." (quoting *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 150 (Tex. App.—Austin 2001, no pet.))).

Acknowledging that peace officers "commonly engage in off-duty security work" yet retain their status as peace officers twenty-four hours a day, the supreme court has identified "helpful guidelines" for determining when an off-duty peace officer resumes his on-duty status by engaging in activities within the course and scope of his governmental/law enforcement employment:

> An officer enforcing general laws in accordance with a statutory grant of authority is acting in the course and scope of employment as a peace officer. But if an officer is protecting a private employer's property, *ejecting trespassers*, or enforcing rules and regulations promulgated by the private employer, a fact question *may* arise as to whether the officer's conduct is in a private or official capacity.

Because Lopez himself has acknowledged that the injury for which he seeks redress arose out of a chain of events that began with CBE's purported overservice of alcohol, his common-law negligence and gross-negligence claims are preempted. *See Duenez*, 237 S.W.3d at 691; *see also Bolanos*, 649 S.W.3d at 762 (holding that appellant's common-law negligence claim asserting alcohol provider's premises liability for failure to provide proper security was preempted); *Parker v. 20801, Inc.*, 194 S.W.3d 556, 558, 560–63 (Tex. App.—Houston [14th Dist.] 2006) (holding that intoxicated patron's

---

*Seward v. Santander*, 713 S.W.3d 341, 355 (Tex. 2025) (quoting *Garza v. Harrison*, 574 S.W.3d 389, 403 (Tex. 2019)) (emphasis added).

Absent law enforcement activity, the authority of an off-duty peace officer performing security-guard work to eject trespassers—for example, to protect patrons on a commercial premises—derives solely from the premises owner's "power of control or expulsion." *See Del Lago Partners, Inc. v. Smith*, 206 S.W.3d 146, 153 (Tex. App.—Waco 2006) (quoting *Tidwell*, 867 S.W.2d at 21), *aff'd*, 307 S.W.3d 762 (Tex. 2010); *Tex. & New Orleans R.R. Co. v. Parsons*, 109 S.W. 240, 247 (Tex. App.—Texarkana) ("There is no known law which empowers a deputy sheriff, or any other officer, to make such an eviction from private property. The right to have this done was the private and personal right of the railroad company[] and could be performed only by its sanction or authority."), *aff'd*, 113 S.W. 914 (Tex. 1908). Accordingly, absent any evidence of an arrest or detention for public intoxication, including the conducting of standard field sobriety tests, the forcible ejection of Lopez exhibited none of the indicia of law enforcement activity that would foreclose CBE's vicarious liability therefor. *See Parsons*, 109 S.W. at 247 ("The fact that no arrest was attempted by [the deputy sheriff] tends to show that no official action was intended."); *see also Monroe v. State*, 465 S.W.2d 757, 758–59 (Tex. Crim. App. 1971) (holding arrest of nightclub patron for public intoxication "legal" when made by an off-duty, uniformed police officer working security for the club); *Hardin v. State*, 387 S.W.2d 60, 61 (Tex. Crim. App. 1965) (holding bar patron's arrest for public intoxication authorized when he had been observed with his head on table and needed assistance to stand when requested ); *cf. Seward*, 713 S.W.3d at 369–72 (Busby, J., concurring) (observing that the extent to which a private employer may enjoy the benefit of governmental immunity by hiring an off-duty peace officer remains an open question).

15

common-law premises security claim arising from a parking lot fight with another intoxicated patron was preempted), *rev'd on other grounds*, 249 S.W.3d 392 (Tex. 2008). *But cf. Del Lago Partners, Inc.*, 307 S.W.3d at 769 (imposing common-law duty on bar owner to protect intoxicated patrons from imminent assaultive conduct of other intoxicated patrons even though evidence strongly suggested overservice of alcoholic beverages resulted in melee between fraternity and wedding parties).[10]

Accordingly, the trial court did not err by granting CBE summary judgment on Lopez's negligence and gross-negligence claims due to preemption.

---

[10]Lopez relies on *Kovacic v. Larry Brown Enters., L.L.C.*, 693 F. Supp. 2d 660 (S.D. Tex. 2010) (order), to support his contention that his negligence and gross-negligence claims are not preempted. But this case is distinguishable. In *Kovacic*, an intoxicated bar patron—Zachary Kovacic—was escorted outside by the bar's employees and "involuntarily handcuffed" after he had purportedly created a disturbance and had "tr[ied] to start a fight." *Id.* at 661, 666–67. The bar's employees held Kovacic outside the bar while waiting for the police, who "placed him in the back of their patrol car" once they arrived. *Id.* at 661–62. But instead of taking Kovacic to the police station or to his motel, the officers "unceremoniously released" him at a darkened intersection "approximately 1.5 miles" from his motel. *Id.* at 662. Shortly thereafter, he was struck by a vehicle and killed. *Id.* Kovacic's heirs sued the bar, asserting a claim under the Act as well as common-law claims for assault, false imprisonment, and negligence. *Id.* The district court granted the bar's summary-judgment motion as to the dram-shop claim, but it denied the motion as to the assault and false-imprisonment claims. *Id.* at 663–67. Lopez makes much of the fact that the bar never argued that the plaintiffs' common-law claims were preempted and that the district court allowed the plaintiffs to pursue their common-law claims—including their negligence claim—after dismissing their dram-shop claim. But unlike Lopez, the *Kovacic* plaintiffs based their negligence claims and their dram-shop claim on separate and distinct injuries. In their dram-shop claim, they sought to hold the bar liable for Kovacic's vehicular death, but their negligence claim sought damages "only with respect to his assault[] and false imprisonment" at the bar. *Id.* at 663. Because, unlike the *Kovacic* plaintiffs, Lopez based his negligence and gross-negligence claims on the same injury as his dram-shop claim—an injury that, according to his own argument, was caused by CBE's overserving him with alcohol—they are preempted.

16

## C. Assault

Alternatively, although Lopez generally challenged the trial court's summary-judgment ruling in his appellate brief, he failed to negate each ground upon which the trial court could have granted CBE summary judgment on his common-law respondeat superior assault claim. Therefore, we must affirm this claim's dismissal irrespective of its merits.

When—as here—a trial court's order granting summary judgment does not specify the grounds on which the order is based, the appealing party must negate each possible ground. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226 (Tex. 2022). A party may negate each ground by raising separate issues or by asserting a general issue challenging the summary judgment and, within that issue, providing an argument negating all possible grounds upon which summary judgment could have been granted. *Id.* at 227. An appellate court "must affirm a summary judgment if any ground on which the judgment could have been based stands unchallenged— 'regardless of the merits of the unchallenged ground[s].'" *Madhu Lodging Partners, LP v. AmGuard Ins. Co.*, No. 02-23-00379-CV, 2024 WL 2760482, at *2 (Tex. App.—Fort Worth May 30, 2024, pet. denied) (mem. op.) (quoting *McCurley v. Tex. Motor Speedway, Inc.*, No. 02-19-00108-CV, 2019 WL 6606103, at *1 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.)).

To prevail on his respondeat superior assault claim, Lopez was required to prove (1) that he was injured by an assault, (2) that the tortfeasor was one of CBE's

employees, and (3) that the employee was acting within the scope of his employment when the assault was committed. *See GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617–18 (Tex. 1999); *Rodriguez v. Panther Expedited Servs., Inc.*, No. 04-17-00291-CV, 2018 WL 3622066, at \*5 (Tex. App.—San Antonio July 31, 2018, pet. denied) (mem. op.). In its no-evidence summary-judgment motion, CBE challenged all three of these elements. Thus, to negate the trial court's summary judgment as to his respondeat superior assault claim, Lopez was required to demonstrate that a genuine issue of material fact exists as to each element. *See Madhu Lodging Partners, LP*, 2024 WL 2760482, at \*2; *see also* Tex. R. Civ. P. 166a(i). But he failed to do so.

In his appellate brief, Lopez asserts a broad issue generally questioning whether the trial court erred by granting CBE summary judgment on his dram-shop and respondeat superior assault claims.[11] But the vast majority of Lopez's brief is devoted to his dram-shop claim; his argument in support of his respondeat superior assault claim is threadbare. Indeed, he does not even enumerate the latter claim's elements anywhere in his brief, much less provide a robust argument that a fact issue exists as to each element. Although Lopez offers at least some argument to support the existence of a fact issue regarding the first two elements, he wholly fails to address the

---

[11]Although the broad issue set forth in Lopez's brief's "Issues Presented" section does not address the preemption of his negligence and gross-negligence claims, he argues elsewhere in his brief that these claims are not preempted. Thus, this issue was fairly raised, *see Gray v. Crosby*, No. 02-24-00336-CV, 2024 WL 5083190, at \*3 n.3 (Tex. App.—Fort Worth Dec. 12, 2024, no pet.) (mem. op.), and rejected on its merits, *see supra* Section II.B.

third element—whether the employee–tortfeasor was acting within the scope of his employment when the alleged assault occurred.

Because Lopez did not challenge every ground on which the trial court could have granted CBE summary judgment on his respondeat superior assault claim, we affirm the trial court's ruling as to this claim to the extent it is not preempted. *See Medrano v. Kerry Ingredients & Flavours, Inc.*, No. 02-24-00262-CV, 2025 WL 52125, at *4 (Tex. App.—Fort Worth Jan. 9, 2025, no pet.) (mem. op.); *Villanueva v. RNA Fin. LLC*, No. 02-23-00435-CV, 2024 WL 3365227, at *3 (Tex. App.—Fort Worth July 11, 2024, no pet.) (mem. op.); *Madhu Lodging Partners, LP*, 2024 WL 2760482, at *2.

## D. Texas Dram Shop Act

Lopez contends that the trial court erred by granting CBE summary judgment on his dram-shop claim because he presented sufficient evidence to create a fact issue regarding each of this claim's essential elements. We agree.

As previously noted, the legislature passed the Act to discourage alcoholic-beverage providers from serving obviously intoxicated individuals who might seriously injure themselves or others. *See Duenez*, 237 S.W.3d at 683. To achieve this purpose, the Act imposes liability on an alcohol provider for the actions of an intoxicated individual if (1) the provider served alcohol to an adult recipient (2) when it was apparent to the provider that the recipient was obviously intoxicated to the point that he presented a clear danger to himself or others and (3) the recipient's

19

intoxication proximately caused the plaintiff's injury. *See* Tex. Alco. Bev. Code Ann. § 2.02(b); *Bolanos*, 649 S.W.3d at 759.

In its no-evidence summary-judgment motion, CBE argued that Lopez's dram-shop claim failed as a matter of law because there was no evidence to support any of these elements.[12] Lopez presented ample summary-judgment evidence, including affidavits and bank records, supporting his allegations that CBE had served him alcohol on the night that he was injured and that it had continued to serve him when it was apparent that he was obviously intoxicated. Thus, the parties' focus—both in the trial court and on appeal—has been on the sufficiency of the evidence to support the proximate-cause element.

For purposes of a dram-shop claim, the relevant causal link is between the plaintiff's injury and the recipient's intoxication.[13] *See Borneman*, 22 S.W.3d at 412–13;

---

[12]CBE additionally argued in its traditional summary-judgment motion that it was entitled to judgment as a matter of law because it had conclusively established that it satisfied the elements of the Act's safe-harbor provision. *See* Tex. Alco. Bev. Code Ann. § 106.14(a). But because the trial court sustained Lopez's objections to CBE's summary-judgment evidence supporting the first two elements of its safe-harbor defense, the trial court could not have granted CBE summary judgment on Lopez's dram-shop claim based on this defense. *See 20801, Inc.*, 249 S.W.3d at 394 (holding that alcohol providers have the burden of proof on the first two elements of the Act's safe-harbor defense).

[13]The plaintiff may be a third party or—as in the present case—the intoxicated individual himself. *Compare Cianci v. M. Till, Inc.*, 34 S.W.3d 327, 328 (Tex. App.—Eastland 2000, no pet.) (arising from suit filed by driver involved in automobile accident with intoxicated recipient), *with Smith*, 858 S.W.2d at 355 (holding that "the intoxicated individual may bring a cause of action for his own injuries" under the Act).

*Biaggi v. Patrizio Rest. Inc.*, 149 S.W.3d 300, 304 (Tex. App.—Dallas 2004, pet. denied) (op. on reh'g). Proximate cause has two components: cause-in-fact and foreseeability. *Boggs v. Bottomless Pit Cooking Team*, 25 S.W.3d 818, 823 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) (op. on reh'g)). To constitute a cause-in-fact, the recipient's intoxication must have been a "substantial factor" in bringing about the injury—that is, a factor "without which no harm would have been incurred." *Boyd v. Fuel Distribs., Inc.*, 795 S.W.2d 266, 272 (Tex. App.—Austin 1990, writ denied) (first citing *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex. 1988); and then citing *Mo. Pac. R.R. Co. v. Am. Statesman*, 552 S.W.2d 99, 103 (Tex. 1977)). An injury is foreseeable if a person of ordinary intelligence should have anticipated that it could occur as a result of the recipient's intoxication. *See Boggs*, 25 S.W.3d at 823.

CBE argues that it is entitled to summary judgment on Lopez's dram-shop claim because he cannot remember what happened at the time he was injured. According to CBE, because a factfinder could not find that Lopez's intoxication was a cause-in-fact of his injury without engaging in impermissible inference stacking, his dram-shop claim fails as a matter of law. *See Raoger Corp.*, 711 S.W.3d at 213 ("Findings 'must be supported by facts in evidence, not conjecture,' and we cannot 'pile speculation on speculation and inference on inference.'" (quoting *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (Tex. 2003)). But the record contains sufficient circumstantial evidence to support such a finding without stacking inferences.

21

Lopez presented summary-judgment evidence showing that on the night in question, he consumed alcohol at the Old School Texas bar for several hours and became so intoxicated that he struggled to talk or stand; CBE's security personnel forcibly ejected him from the bar to the parking lot, aggressively shoving him during the removal process; and Lopez was found by his friends a short time later with a bloody left eye and "some cuts on him."[14] Based on this evidence, a factfinder could reasonably infer that, more likely than not, the immediate cause of Lopez's eye injury was either (1) that he was assaulted by CBE's security guards during (or shortly after) the forcible-ejection process (either by being struck in the eye directly or by being violently shoved in such a manner that he fell to the ground and hit his eye) or (2) that he lost his balance—which the record shows had been significantly impaired by his alcohol consumption—and fell after having been left in that impaired condition in the parking lot. *See Geraldon*, 128 S.W. at 612 (recognizing wrongful expulsion cause of action predicated upon impaired condition of patron (citing *Weymire*, 3 N.W. at 542–43)). Stated differently, considering the entire range of possibilities, a factfinder could conclude that there is a greater-than-fifty-percent likelihood that Lopez's eye was injured in one of these two scenarios. Because Lopez's intoxication would be a

---

[14]While it is unclear exactly how much time elapsed between Lopez's removal from the bar and his friends' finding him in the parking lot, the record reflects that Lopez was ejected from the bar while his designated-driver friend went to the restroom and that his friends went to find him shortly after the designated driver returned to their table.

substantial factor in either scenario,[15] it logically follows that a factfinder could reasonably infer that, more likely than not, Lopez's eye injury was proximately caused by his intoxication.[16] *See Boyd*, 795 S.W.2d at 272. Accordingly, to the extent that Lopez can rely on both of these theories, he has satisfied his summary-judgment burden with respect to his dram-shop claim's causation element. *See Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 73 (Tex. 2023) (explaining that "[t]o survive summary judgment, [a] plaintiff['s] causation evidence must raise a genuine fact issue as to whether it is more likely than not that" his injury was caused by the defendant's tortious conduct).

CBE argues that Lopez cannot rely on a slip-and-fall causation theory because he failed to plead it. But the only case that CBE cites to support this argument states merely that a summary-judgment movant need not disprove an unpleaded "*claim raised for the first time in a non[]movant's summary[-]judgment response.*" *See*

---

[15]Nothing in the record suggests that Lopez would have been expelled from the bar but for his intoxication. Similarly, because the record reflects that at the time of his injury, Lopez was intoxicated to the point that he could barely stand up or walk, it would be unreasonable to infer that if he fell, his intoxication was not a substantial factor. *Cf. Love v. D. Hous., Inc.*, 67 S.W.3d 244, 248 (Tex. App.—Houston [1st Dist.] 2000) (recounting expert's testimony that the "clinical symptoms of intoxication" include "disorientation, impaired balance, lack of muscular coordination, [and] a staggering gait"), *aff'd*, 92 S.W.3d 450 (Tex. 2002).

[16]To be clear, this does not involve the stacking of two separate inferences. The factfinder is only asked to make one inference—that, more likely than not, Lopez was injured in one of the two intoxication-fueled scenarios described above. That Lopez's intoxication was a substantial factor in bringing about his injury logically follows from this single inference.

*MedStar Funding, LC v. Willumsen*, 650 S.W.3d 809, 813 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (emphasis added). Because it is apparent—and CBE does not dispute—that Lopez pleaded a dram-shop claim, *MedStar Funding* is inapposite. Lopez asserted his slip-and-fall causation theory in his written summary-judgment response, in his oral argument at the summary-judgment hearing, and in his supplemental trial-court briefing on causation, yet CBE never argued in the trial court that it had been unfairly surprised by this theory or that Lopez had waived it by failing to plead it. Because Lopez's petition—against which no special exceptions have been sustained[17]—is broad enough to encompass this causation theory and because he raised it in his written summary-judgment response, Lopez may rely on it as grounds for reversal on appeal. *See* Tex. R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979) (explaining that to be considered on appeal, a nonmovant's argument against summary judgment "must be in writing and before the trial judge at the hearing"); *see also Abraham & Co. v. Markel Ins. Co.*, 721 S.W.3d 37, 47 (Tex. App.—Houston [14th Dist.] 2025, no pet.) ("Because no special exceptions were sustained against [appellant's] petition in the court below, this court must construe that pleading liberally in [its] favor to include all claims that reasonably may

_____

[17]CBE included special exceptions in its amended answer, but nothing in the record indicates that it ever obtained a ruling on them. *See Bridwell v. Grilletta*, No. 09-16-00016-CV, 2017 WL 218912, at \*7 (Tex. App.—Beaumont Jan. 19, 2017, no pet.) (mem. op. on reh'g) ("It is the responsibility of the defendant to file special exceptions to the petition *and obtain a ruling thereon* if he challenges the specificity of the allegations in the plaintiff's petition, or he waives the right to complain about the specificity of the pleading on appeal." (emphasis added)).

be inferred from the language contained in the petition . . . ." (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000))); *Johnson v. Saldana*, No. 01-98-00942-CV, 2000 WL 424343, at *2 (Tex. App.—Houston [1st Dist.] Apr. 20, 2000, no pet.) (not designated for publication) ("When . . . there is no ruling on special exceptions, the petition is to be construed liberally in favor of the pleader . . . ." (citing *Roark v. Allen*, 633 S.W.2d 804, 809–10 (Tex. 1982))).

CBE cites *Stumph v. Dallas Lemmon West, Inc.*, No. 05-14-01044-CV, 2015 WL 5655835 (Tex. App.—Dallas Sept. 25, 2015, pet. denied) (mem. op.), to support its contention that Lopez failed to create a fact issue on causation, but this case is distinguishable. In *Stumph*, the injured plaintiff left a bar "alone, on foot, around 12:45 a.m." after a night of drinking and was found "unconscious in a creek bed beneath a 'vehicular' bridge" at "approximately 7:14 a.m." the next morning. *Id.* at *1. He "remember[ed] nothing," there were no witnesses "who saw any events involving [the plaintiff] at or near the bridge," and there was "no evidence indicating whether [he] was ever on the bridge." *Id.* at *2. The police and medical records indicated that the plaintiff could have been assaulted or, alternatively, could have fallen or jumped from the bridge. *Id.* at *1–2. The plaintiff—theorizing that his intoxication had proximately caused him to fall from the bridge—sued the bar under the Act.[18] *Id.* The court of appeals affirmed the trial court's take-nothing summary judgment in the bar's favor

---

[18]The plaintiff also sued the bridge owner under a premises-liability theory. *See Stumph*, 2015 WL 5655835, at *1–2.

because there was "no evidence in the record of what happened" to the plaintiff during the roughly six-and-a-half-hour period between the plaintiff's leaving the bar and his being found in the creek. *Id.* at *4.

But unlike the plaintiff in *Stumph*, Lopez was found by his two friends a short time—likely just a few minutes—after being expelled from the bar, not hours later. And because one friend had been prevented from assisting him from the bar by CBE's security personnel and the other friend, who had committed to being Lopez's designated driver, was in the restroom at the time, under either liability scenario the gap in time between when Lopez was ejected and when he was discovered injured appears attributable to the manner of ejection itself. Because there is far less unaccounted-for time here than in *Stumph*, the link between Lopez's intoxication and his injury is stronger and the range of reasonable causation inferences is narrower. In further contrast to *Stumph*, in which there was no evidence that the plaintiff had ever even been on the bridge from which he had allegedly fallen, the record in this case indicates that CBE's security personnel had aggressively shoved Lopez while expelling him from the bar and that Lopez could barely stand or walk at the time that he was expelled. Thus, the circumstantial evidence supporting Lopez's intoxication-based causation theories is much stronger than the evidence in *Stumph*.

Because Lopez remembers nothing, no video evidence exists, and there are no witnesses, the specific events giving rise to Lopez's eye injury will likely never be known. But he is not required to prove his case with absolute certainty or to negate

every possible non-intoxication-related causation theory. *See Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 460 (Tex. 1992). Rather, "it is enough to introduce evidence from which reasonable persons may conclude that [it is more likely that] the event was caused by [Lopez's intoxication] than [that] it was not." *Id.* (quoting W. Keeton, Prosser and Keeton on Torts § 41, at 269 (5th ed. 1984)); *see Helena Chem. Co.*, 664 S.W.3d at 73. Thus, by presenting summary-judgment evidence supporting an inference that, more likely than not, his eye injury was caused either by (1) a security guard's assaulting him while forcibly ejecting him from the bar due to his extreme intoxication or (2) by losing his alcohol-impaired balance and falling after being removed from the bar to its parking lot, Lopez satisfied his burden to create a genuine issue of material fact on his dram-shop claim's causation element. *See Helena Chem. Co.*, 664 S.W.3d at 73; *Havner*, 825 S.W.2d at 460. Accordingly, the trial court erred by awarding CBE summary judgment on Lopez's dram-shop claim.[19] *See* Tex. R. Civ. P. 166a(c), (i).

### III. CONCLUSION

In light of the foregoing, we reverse the trial court's summary judgment as to Lopez's dram-shop claim and affirm it as to his negligence, gross-negligence, and

---

[19]As noted, Lopez presented ample evidence to create a fact issue regarding the other two elements of his dram-shop claim—that CBE (1) had served him alcohol on the night that he was injured and (2) had continued to serve him when it was apparent that he was obviously intoxicated to the point that he was a danger to himself or others. *See* Tex. Alco. Bev. Code Ann. § 2.02(b).

respondeat superior assault claims. We remand this case for further proceedings consistent with this opinion.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: April 23, 2026